OWENS *v.* JABINE.

Opinion delivered December 21, 1908.

1. CURTESY—REQUISITES.—To entitle a husband to an estate by the curtesy, it is necessary that the wife be seized during coverture of an estate of inheritance in land. (Page 472.)

2. SAME—NECESSITY OF SEIZIN.—Where a wife, as sole heir of her father, was entitled to an estate of inheritance in his homestead upon her mother's death, but died before the mother, who also had an estate of

homestead therein, she was never seized of an estate of inheritance in such homestead, and her husband never became entitled to curtesy therein.. (Page 473.)

3. HOMESTEAD—ACT OF 1852 CONSTRUED.—The act of December 8, 1852, providing for a homestead right in "one town or city lot," intended the lot or piece of ground on which the head of a family has a house, with the appurtenances which he uses as a home, no matter whether it contains more or less than one lot, according to the plat and survey of the town or city. *Wassell* v. *Tunnah*, 35 Ark. 101, followed. (Page 473.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; affirmed.

*J. W. Blackwood,* for appellant.

1. To constitute curtesy, there must be a lawful marriage, seizin in fact or in law, in the wife, birth of issue and death of wife. All the facts are clearly proved. 47 Ark. 175; 21 *Id.* 601; 15 *Id.* 585; 63 *Id.* 254; 64 *Id.* 356; Tiedeman on Real Property, pp. 106-7; 2 Minor's Inst. 121; 8 Cyc. 510; Wash. on Real Prop., pp. 174-5; 49 Kans. 49; 55 Iowa 256; 3 Oh. St. 377; 1 Pet. (U. S.) 507. In this State title is substituted for seizin. 15 Ark. 585; 120 Ill. 638-9; Williams on Real Prop. (4 Ed.), Appendix "E," 491, 502.

2. Dower is not an estate until assigned. A widow's quarantine is not hostile to the heir. 44 Ark. 492; 87 Ill. 80; 100 *id.* 356; 101 *Id.* 628; 25 Mo. 349; 2 N. H. 31; 34 *Id.* 31; 76 Fed. 925.

3. The homestead of Edmund O' Connor was confined to one lot. Gould's Dig. § § 29, 30, ch. 68.

4. If there was a homestead, it was abandoned. 55 Ark. 139. Besides, there were two houses or homes on the lots, and 25 Ark. 101 does not apply. 33 Ark. 404; 31 *Id.* 145.

*S. R. Allen* and *E. W. Kimball,* for appellees.

1. The *three* lots were the homestead of Edmund O'Connor, and after his death that of the widow until *she died,* long after the death of plaintiff's wife. There never was seizin in fact or law in plaintiff's wife. 25 Ark. 101; 15 Ark. 466; 63 *Id.* 254. There must be seizin in the wife. 1 How. (U. S.) 38; 21 Ark. 600; 47 *Id.* 175; 64 *Id.* 356.

2. The homestead right is a fixed definite estate in the widow, and there could be no seizin in the heir until the death of the widow. 43 N. C. 177; 3 Baxter (Tenn.), 420; 3 Head.

(Tenn.) 491; 23 Pa. State, 305; 12 Cyc. 1011-12; 58 Conn. 174; 147 Mass. 602; 1 Barb. Ch. 598; 43 N. Y. 549; 63 Ark. 254.

BATTLE, J. This action was brought by E. J. Owens against Mary E. and Lucian Jabine in the Pulaski Circuit Court to recover possession of a certain part of lot 7 in block 117 in the city of Little Rock, Arkansas. He alleges in his complaint that he owns an estate by the curtesy in lots 7, 8 and 9 in block 117 in the city of Little Rock, that these lots were owned by Edmund O'Connor in his lifetime, and were occupied by him and his family when he died in 1862, leaving surviving him Mary O'Connor, his widow, and Margarett O'Connor, his daughter, then an infant two years old. That Mrs. O'Connor and her daughter, Margarett, continued to occupy these lots until the year 1878, when plaintiff and Margarett married. That plaintiff and his wife took immediate possession of the lots, and Mrs. O'Connor lived with them, and he supported her as a member of his family. That he fenced the lots and built houses thereon and otherwise improved the same. That there were born to him and his wife, in lawful wedlock, three children, all girls, the eldest, the defendant, Mary E., who married the defendant, Lucian Jabine. That plaintiff and his family lived upon the lots and occupied them until the year 1892, when his wife, Margarett, departed this life intestate, leaving the three daughters her sole and only heirs at law. That he and his family continued to occupy the lots for several years thereafter and until Mrs. O'Connor died, and he still has possession of the same, except the west portion of lot 7, it being a house numbered 508 West Fifth Street, with the ground inclosed therewith. That the defendants, without authority or right, took possession of the house on lot 7, and refuse to allow plaintiff to take possession or pay rents therefor, to his damage in the sum of $200. He asks for judgment against the defendants for the house and ground so held by them, and the $200 damages.

Defendants answered and denied that plaintiff is entitled to the possession and rents and profits of lots seven, eight and nine in block 117, and that they (defendants) are unlawfully in possession; and admitted that Edmund O'Connor lived with his wife, Mary O'Connor, and Margarett O'Connor, his only child, upon the lots as his homestead, until his death, which occurred in the year 1862; that Margarett was then two years old; and

that Edmund O'Connor was the owner of the lots. They alleged that Mrs. O'Connor held and occupied the lots, not until the marriage of Margarett in 1878, but until her death on the 9th day of September, 1893, Margarett having died on the 30th day of March, 1892, intestate; that it is not true that plaintiff upon his marriage took possession of the lots, and that Mrs. O'Connor lived with him and he supported her as a member of his family, but on the contrary he and his wife lived with Mrs. O'Connor, who continued to hold possession of the lots, and during her life "sedulously" guarded against plaintiff having any control of the same. That under her direction houses and buildings were erected upon the lots, the costs thereof were defrayed by her in her own name, without the assistance of the plaintiff, with money accruing from her own earnings and the rents of the premises. That three children were born unto plaintiff and his wife; that after the death of Mrs. O'Connor they resided with plaintiff upon the lots, until the 26th of June, 1899, when they moved to a homestead elsewhere in the city of Little Rock. That Margarett, wife of plaintiff, never was at any time seized or possessed of the lots, and plaintiff has no estate by the curtesy in the same. That defendants are in possession of the house on the west end of lot seven and ground inclosed with it, in right of Mary E. Jabine, an heir of Margarett, her mother, and is entitled to hold the same. They, defendants, allege that they were married on the 30th day of March, 1903; that plaintiff has, ever since the death of Mrs. O'Connor on the 9th day of September, 1893, collected and held the rents and profits of all the lots, consisting of four houses, except the part held by the defendants, which they have held since the 15th day of November, 1904. That he has never accounted for any of the rents and profits, amounting in all to more than $4,000. They made their answer a cross-complaint, and asked that plaintiff be required to account to them for one-third of the rents and profits of the lots since the 9th of September, 1893, and that he be restrained from interfering with and setting up any claim to the one-third of the lots belonging to Mrs. Jabine, and asked that this action be transferred to the Pulaski Chancery Court.

Plaintiff answered defendant's cross-complaint, and denied

the foregoing allegations contained therein, except as admitted in his complaint.

The action was transferred to the Pulaski Chancery Court. Upon a hearing the court found as follows: "Edmund O'Connor in 1862 died seized of lots seven, eight and nine, in block 117, in the city of Little Rock, Pulaski County, Arkansas, and that the same, taken altogether, was his homestead; that he left surviving him his widow, Mary O'Connor, and one daughter, Margarett O'Connor, then about four years of age, his heir at law. That at his death Mary O'Connor, his widow, was rightfully in possession of said lots and remained in full possession of the same up to her death in September, 1893; that said child, Margarett O'Connor, intermarried with plaintiff, E. J. Owens, in 1878; that issue of said marriage living at the time of her death in 1892 was Mary E. Owens, now Jabine, the defendant, and Katherine Owens and Margarett Owens, her three heirs at law. At the time of the death of said Margarett Owens the said Mary O'Connor was in full, exclusive possession of said lots under her rights of homestead and dower, as widow of said deceased, dower never having been assigned to her, and remained in possession until her death, sixteen months after the death of her daughter, Margarett, the wife of plaintiff. The court thereupon finds that no estate by the curtesy accrued to the plaintiff by reason of the premises."

The court dismissed the complaint for want of equity, and rendered judgment in favor of defendants against the plaintiff for one-third of the lots of which she was not in possession. Plaintiff appealed.

We find that the preponderance of the evidence adduced at the hearing sustains the findings of facts by the court.

To entitle a husband to an estate by the curtesy, it is necessary that the wife be seized during coverture of an estate of inheritance in land. In this case the lots in controversy constituted the homestead of Edmund O'Connor at the time of his death. His widow, Mary O'Connor, and his daughter, Margarett, during her minority, were entitled to hold it as a homestead. Before the expiration of the homestead the daughter died. The daughter was the only heir of Edmund O'Connor, and inherited an estate in his lands. Her right to the enjoyment and possession of the

homestead and estate of inheritance did not exist at one and the same time; and neither merged in the other. *Kessinger* v. *Wilson,* 53 Ark. 400, 403. As the daughter died before the homestead expired, she never was seized in law or fact of the estate of inheritance, and her husband, the appellant, is not entitled to an estate by the curtesy in the lots. *Chew* v. *Commissioners of Southwark,* 5 Rawle, 160; *In the Matter of Cregier,* 45 Am. Dec. 416; *Malone* v. *McLaurin,* (Miss.), 90 Am. Dec. 320; *Reed* v. *Reed,* (Tenn.), 75 Am. Dec. 777; 12 Cyc. Law & Procedure, 1011, and cases cited; 8 Am. & Eng. Enc. of Law, 511, and cases cited.

But appellant contends that Mrs. O'Connor was entitled to a homestead under the act of December 8, 1852, and under that act she was entitled to only one town or city lot as a homestead. The words "one town or city lot," as used in that act, were construed in *Wassell* v. *Tunnah,* 25 Ark. 101, to mean "the lot or piece of ground on which the head of a family has a house, with the appurtenances which he uses as a home, no matter whether it contains more or less than one lot, according to the plat and survey of the town or city." According to this construction, the three lots in controversy constituted the homestead of Edmund O'Connor at the time of his death, and of his widow, Mrs. O'Connor and their infant daughter after his death.

Decree affirmed.

HART, J., disqualified and not participating.