## JOHNSON *v.* TAYLOR.

### Opinion delivered October 6, 1919.

1. HOMESTEAD — DOMICILE OF MINORS — CONFLICT OF LAWS.—The last domicile of the deceased father of an infant constitutes the legal domicile of the infant and the domicile of the infant can not be changed or removed by his own act until he reaches his majority.

2. HOMESTEAD—SALE OF RIGHTS OF MINOR CHILDREN.—The sale of the homestead to pay the debts of the deceased father is invalid when he left minor children surviving him.

3. LIMITATIONS — JUDICIAL SALES. — The statute of limitations, as announced in Kirby's Digest, § 5060, does not begin to run against judicial sales, until five years from the date of confirmation.

4. LACHES—DEFINITION.—The delay which will bar an action is delay working to another's disadvantage, which may come from the loss of evidence, change of title, intervention of equities and other causes.

5. ESTOPPEL IN PAIS—DEFINITION.—Estoppel *in pais is* worked by conduct intended and calculated to induce, and in fact inducing, another person to alter his condition so that it would be a fraud in him to allow the person to take an inconsistent attitude to his detriment.

6. HOMESTEAD — SALE OF — DAMAGES.—When homestead land was erroneously sold, their heirs, in recovering the land, may also recover a reasonable rental for the land, and the value of timber removed.

7. COLOR OF TITLE — IMPROVEMENT TO LANDS — BETTERMENT ACT.— Under the betterment act, an occupant of land cannot claim for improvements made unless he has color of title. A certificate of purchase is not color of title.

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Stevens & Stevens,* for appellant.

1. The sale of the land by the administrator of R. O. Taylor was a valid sale and vested the title in the vendees on its confirmation. The widow had conveyed her homestead rights. The minor children were with their mother in another State and the lands were subject to the payment of debts of the deceased R. O. Taylor, and the sale was valid. Kirby's Digest, § 3898; art. 9, § 3, Const. 1874; 21 Cyc. 458. Under the facts of this

case the lands were not a homestead. 26 Am. St. 319; 29 So. 777; 21 Cyc. 467. The proof shows that Frank and Haston Taylor, on the death of their father, were not a part of the family and had not been for fully fifteen or twenty years. 24 Ark. 158; Kirby's Digest, § § 3882-3, 3898; 71 Ark. 206.

2. The sale was void and appellees are barred. 53 Ark. 410; 79 Id. 411; 54 Id. 642; 76 Id. 150.

3. Appellees are barred by *laches* and are estopped. 55 Ark. 94; 33 Id. 468-9; Bigelow on Estoppel (6 ed.) 608.

Gross negligence will estop. 97 Ark. 43; 89 Id. 349.

Appellees are barred by limitation. 54 Ark. 87; 87 Id. 237; 55 Id. 85; 60 Id. 50.

4. The place had no rental value but for Johnson's improvements and appellees are barred from recovering rents. 33 Ark. 495; 46 Id. 109; 42 Id. 423; 55 Id. 369.

The lower court erred in decreeing title in appellees and in the money judgment against appellant, and the decree should be reversed and dismissed as to the children of R. O. Taylor and the two oldest children of Mrs. Jane Thomas, deceased.

*McKay & Smith,* for appellees.

1. The appeal should be dismissed, as it is shown that appellant has settled with all except two of the original heirs and a portion of the grandchildren who are heirs of Mrs. Jane Thomas, deceased. The decree, not abstracted by appellant, shows that appellant is now the owner of seven-tenths interest in the lands, leaving a three-tenths interest that has not yet been settled. Appellant's act in settling this judgment with the principal part of the appellees is inconsistent with his right to appeal. If this judgment is reversed, it must be as to all the appellees. He has acquiesced in the judgment and can not appeal. 3 C. J., pp. 665, 675-6-7; 113 Ark. 25; 132 Id. 69; 106 Id. 292; 83 Id. 306; 53 Id. 514.

2. The absence of the minor children at the time of their father's death does not deprive them of their homestead rights. Art. 9, § 6, Const. 1874; 29 Ark. 280-293.

The last domicile of the deceased father is the minor children's domicile and can not be changed until majority. 116 Ark. 361; 16 *Id.* 377; 72 *Id.* 299. The minors could not abandon their homestead right if the widow could. 125 Ark. 291; 115 *Id.* 359; 113 *Id.* 135; 123 *Id.* 389; 126 *Id.* 1.

3. Appellees are not barred by limitation. 53 Ark. 400. The seven years' statute applies, and not the five years', as to judicial sales. 115 Ark. 359. The statute only runs from the confirmation of the sale, not from its date. 126 Ark. 86; 108 *Id.* 370; 69 *Id.* 539; 61 *Id.* 80; 82 *Id.* 55; 32 *Id.* 181; 76 *Id.* 146; 69 *Id.* 540. The sale here and the confirmation are absolutely void, because they were not made in compliance with our statutes. Kirby & Castle's Digest, § § 4194-196; 106 Ark. 563.

4. Appellant is not entitled to recover for improvements, as he made them after the sale but before the confirmation thereof, and he had no color of title even, nor did he believe himself the owner. 47 Ark. 62; *Ib.* 528; 48 *Id.* 183; 93 *Id.* 93; 102 *Id.* 181. All he had was a certificate of purchase; no title nor color thereof. 67 Ark. 184; 72 *Id.* 601; 26 *Id.* 48; 76 *Id.* 152; 126 *Id.* 86; 105 *Id.* 261; 69 *Id.* 539. He was not entitled to possession until he received his deed duly confirmed and entitled to no rents nor improvements. 108 Ark. 370; 47 *Id.* 528; 67 *Id.* 184; 92 *Id.* 173.

5. Appellees are not estopped or barred by *laches*. 131 Ark. 77; 70 *Id.* 371; 67 *Id.* 320; 103 *Id.* 251.

HUMPHREYS, J. This suit was commenced on September 13, 1916, as an ejectment suit by appellees against appellant in the Columbia Circuit Court to recover certain lands alleged to have comprised the homestead of their father, R. O. Taylor, at the time of his death, and for damages on account of rents and timber cut during the detention thereof by appellant. The complaint alleged ownership in appellees of the land by inheritance from their father, and that appellant was in the unlawful possession thereof.

Appellant answered, admitting that appellees were the only heirs of R. O. Taylor, deceased, but that their title was extinguished under a probate sale of said lands for the payment of valid claims against the estate of said R. O. Taylor, deceased; that he and his brother purchased the lands at said probate sale and received certificates of purchase for the respective parts purchased by each; that his brother assigned his certificate of purchase to the appellant; that the sale was confirmed on the 22d day of November, 1913, at which time, he received a deed to said land; that he went into possession of the land under the certificates of purchase aforesaid and made valuable improvements thereon, setting them out in detail, both as to kind and value; that he paid the taxes thereon in the sum of $81.16; that he paid the administrator, on account of the purchase, $415.99, which was used in liquidating the indebtedness of said estate; that said lands were subject to sale for the indebtedness of the estate, even though the homestead of the deceased at the time of his death, for the alleged reason that the widow had conveyed her homestead right, and that all children entitled to enjoy the homestead were of full age at the time said real estate was ordered sold. As further defenses, appellant pleaded limitations, estoppel and laches.

On motion of appellant contained in the answer, the cause was transferred to the chancery court of Columbia County. Appellees filed a reply, denying all the material allegations relating to new matter in the answer, with the additional request that the deed received under and by virtue of the probate sale be canceled as a cloud on their title.

The cause was heard upon the pleadings and exhibits thereto, depositions of witnesses and an agreed statement of facts marked "1" and "2," from which the court found that appellees were owners of said land by virtue of inheritance from R. O. Taylor, deceased, but that H. T. Taylor, an appellee, had conveyed his interest therein to appellant; that the other appellees owned an undi-

vided nine-tenths in said real estate; that they were entitled to a rental of $1,578.53, covering the period from the institution of the suit until the date of the decree and for three years prior to the institution of said suit, and $167.48 for timber cut and removed from said land by appellant. As an off-set to these two amounts, the court found that appellant was entitled to $81.16 paid for taxes, and $928.90 for improvements, leaving a balance of $635.96 due appellees on account of detention of the lands by appellant; that appellant was entitled to be subrogated to the right of the creditors of the estate of R. O. Taylor, deceased, to the amount of $415 and interest, but that the amount appellant received as rents on the place from the time he took possession until September, 1913, was a full and complete off-set against said last named amount. A decree was rendered in accordance with the findings, from which an appeal has been duly prosecuted to this court. During the pendency of this appeal, appellant has settled with and purchased the interest of Mrs. Jean Taylor, Mrs. Mary Lee Taylor, Mrs. Ida Denman, Mrs. Carrie Sweet, Haston Taylor and Frank Taylor. Based upon appellant's purchase and settlement of said interests during the pendency of this appeal, the other appellees filed a motion to dismiss the appeal. This court dismissed the appeal as to the interest of the appellees purchased by appellant, but overruled the motion as to the appellees whose interests were not purchased.

The following facts are definitely established by the record: R. O. Taylor, the father of appellees, together with his wife, Nancy Taylor, occupied the lands in controversy as their homestead when he died. Years before he married Nancy Taylor, he had been divorced from the mother of Haston and Frank Taylor, who took them in infancy to another State, where they remained until after R. O. Taylor's death. They were both minors at the time of their father's death. Haston became of age December 28, 1910, and Frank in May, 1913. They had never actually lived with their father on the land in question. The older children continued to reside near, and were

living near him when he died. Mrs. Nancy Taylor abandoned her homestead right on January 4, 1910, by conveying same to H. T. Taylor.

H. T. Taylor conveyed his interest to appellant on the 9th day of December, 1913. W. M. Johnson, father of appellant, was appointed administrator of the estate of R. O. Taylor, deceased, on January 7, 1910. He obtained an order, on May 11, 1910, from the probate court to sell the property in question for the purpose of paying the indebtedness of the estate. Pursuant to the order, the land was sold on the 10th day of June, 1910, one parcel being purchased by Henry Johnson and the other by appellant. The land sold for $415, which amounted, including interest, at the date of the judgment to $584.97. Henry Johnson afterwards assigned his certificate of purchase, for the parcel bought by him, to appellant. Appellant went into possession under his certificates of purchase and made valuable improvements thereon prior to May, 1913, and paid $81.16 taxes thereon from that time until the judgment was rendered herein. The sale under which he purchased was reported on November 22, 1913, at which time he received a deed.

The facts responsive to the issues of estoppel, laches, the value of the improvements made and the rental value of the land, both before and after the improvements were made, were in conflict. It would occupy much space to set out the disputed facts in detail, so we will content ourselves with giving our conclusions thereon in determining the questions to which they relate.

It is insisted by appellant that, because Haston and Frank Taylor had never resided with their father upon this particular land and were not with him at the time of his death, they were thereby deprived of their homestead rights in the land in question. Section 6, article 9, of the Constitution of 1874, which is repeated as section 3882 of Kirby's Digest, provides that "* * * if the owner leaves children, one or more, said child or children shall share with said widow, and be entitled to half the rents

and profits till each of them arrives at twenty-one years of age; each child's rights to cease at twenty-one years of age, and the shares to go to the younger children, and then all to go to the widow; and, provided, said widow or children may reside on the homestead or not. * * *" In construing this section of the Constitution, as applied to a widow who did not reside with her husband at the time of his death, this court said, in the case of *Duffy* v. *Harris*, 65 Ark. 251: "In this State it is held that the domicile of the widow follows that of the husband, and we understand this to be the rule, and that the fact that she abandons her husband, and lives apart from him in another State, will not form an exception, nor cause her to forfeit her right to the homestead. She is not a non-resident, while her husband is a resident. Her legal status, as to this, is governed by that of her husband."

(1-2) In the case just quoted from, the wife had abandoned her husband and was residing and leading an immoral life in Missouri. Surely, if a widow under such circumstances does not forfeit her homestead right, it can not reasonably be contended that a minor will forfeit such right by continued absence during minority. This court is firmly committed to the doctrine that "the last domicile of the deceased father of an infant constitutes the legal domicile of the infant and the domicile of the infant can not be changed or removed by his own act until he reaches his majority." *Grimmett* v. *Witherington*, 16 Ark. 377; *Young* v. *Hiner*, 72 Ark. 299; *Landreth* v. *Henson*, 116 Ark. 361. Haston and Frank Taylor, being minors when their father died, were in contemplation of law, members of his family and entitled to their homestead rights in the land in controversy. This being true, the sale of the homestead of R. O. Taylor, deceased, by the administrator, made on the 10th day of June, 1910, was void.

(3) It is next insisted that appellees were barred from instituting this suit by section 5060 of Kirby's Digest, which is in part as follows: "All actions against

the purchaser, his heirs or assigns, for the recovery of lands sold at judicial sales shall be brought within five years after the date of such sale and not thereafter. * * *''

Appellants insist that the date of sale referred to in the statute has reference to the date it was made, and appellants that it has reference to the date it was confirmed. This court said in the case of *Cowling* v. *Nelson,* 76 Ark. 146, that:

''The five-year statute does not apply to judicial sales unless they are confirmed, because there is no sale until that act.''

And in *Morrow* v. *James,* 69 Ark. 539, said: ''Before the statute of limitations of five years could apply, there must have been confirmation of the sale made under the order of the probate court. Without confirmation there was no sale.''

It seems clear that, if there could be no sale until confirmation, the statute could not begin to run until the sale was confirmed, but this court was more specific in *Gavin* v. *Ashworth,* 77 Ark. 242, in which it was said that: ''The limitation of five years, applicable to judicial sales of lands, commences to run as soon as the sale is confirmed.''

And it was still more specific in the case of *Gaither* v. *Gage,* 82 Ark. 51, where it was said, in speaking of the five-year statute of limitations under judicial sales, that: ''The statute runs from the date of the completed sale, regardless of the time when possession is taken.''

Appellant cites and relies upon the construction placed upon the statute in *Mitchell* v. *Etter,* 22 Ark. 178. The ruling in that case had application to a tax sale and not to a judicial sale. It is apparent that this action was not barred by the five-year statute of limitations for the reason that the suit was brought within five years from the confirmation of the sale by the probate court.

(4-5) Again, it is insisted by appellant that appellees were barred by laches and estopped by their conduct from bringing this suit. In the case of *Tatum* v. *Arkansas Lumber Co.,* 103 Ark. 251, this court announced the doctrine that the character of delay which would bar an ac-

tion was "delay working to another's disadvantage, which may come from the loss of evidence, change of title, intervention of equities and other causes." And in the case of *Thompson* v. *Wilhite,* 131 Ark. 77, defined estoppel in pais as follows: "Estoppel in pais is conduct intended and calculated to induce and in fact inducing another person to alter his condition so that it would be a fraud on him to allow the person to take an inconsistent attitude to his detriment."

Upon conflicting evidence, the chancellor found that appellees were not guilty of laches or in any way, by their action, estopped from instituting this suit. Under the rules announced in the cases above cited, applicable to laches and estoppel in pais, it can not be said that the finding of the chancellor, to the effect that the appellees were neither estopped nor guilty of laches, was contrary to the weight of the evidence.

(6-7) Lastly, it is insisted by appellant that the court erred in ascertaining and decreeing $635.96 to appellees by way of damages for the detention of their property. The chancellor found that the rents and profits, for three years prior to the filing of the suit and up until the time of the rendition of the judgment, was $1,578.53, based upon an acreage in cultivation of seventy-four acres at a rental rate of $4 per acre. After a careful reading of the evidence, we think this finding fully sustained by the weight thereof. He also found that appellant had removed timber of the value of $167.48, which finding was likewise sustained by the weight of the evidence. As against the rents and profits, the chancellor allowed appellant an off-set of about $928 for improvements which had been made by him while he occupied the place under a certificate of purchase. Under the Betterment Act, an occupant can not claim for improvements made unless he has color of title. A certificate of purchase is not a color of title. Appellant did not get a color of title in this case until he received his deed on November 22, 1913. This error by the chancellor was favorable to appellant, because the value of the improvements allowed as an off-set amounted

to more than the taxes and money paid for the property to the administrator and expended by him in paying the indebtedness of said estate.

No prejudicial error appearing in the record, the decree is in all things affirmed as to the several interests of the appellees, now before the court, in the land in controversy and in the judgment rendered for damages for the detention thereof.