O'CONNELL *v.* SEWELL.

4-3992

Opinion delivered November 25, 1935.

*Haynie, Parks & Westfall, Nash, Ahern, McDermott & Kiley,* for appellant.

*Newby, Rathbun & Burditt* and *Coleman & Riddick,* for appellee.

HUMPHREYS, J. The only issue presented on appeal and cross-appeal for determination by this court is whether appellant is entitled to the possession of a fund and interest thereon of $60,328.23 held by the Gulf Refining Company of Louisiana, constituting the proceeds of the one-eighth royalty under an oil and gas lease of 160 acres of land in Ouachita County, Arkansas, to-wit: SE¼ of the NW¼ and the SW¼ of the NE¼ of section 33, township 15 south, range 15 west, by reason of the homestead rights of Arthur W. Sewell and John W. Sewell, minors, in said real estate, which was inherited from their mother, Parthenia Berry Sewell; or whether appellee, their father, is entitled to said fund by reason of an estate by the curtesy in said lands.

The undisputed facts in the record are as follows: Nannie Berry, wife of Ab Berry, acquired said real estate by purchase on February 11, 1904. At the time of purchase, Ab Berry and Nannie Berry resided upon an 80-acre tract of land adjoining said 160-acre tract, which

Ab Berry purchased on September 28, 1883, upon which they were residing and continued to reside after Nannie Berry purchased said 160-acre tract. During the year 1910, Nannie Berry died intestate, and, by descent, Parthenia Berry became the sole owner of the 160-acre tract subject to the estate by the curtesy consummate of her father, Ab Berry. Subsequent to the death of Nannie Berry, Parthenia Berry continued to reside with her father, Ab Berry, upon the 80-acre tract. On May 1, 1915, Parthenia Berry married appellee, Arthur W. Sewell, and they lived with Ab Berry on the 80-acre tract until after their first child was born and then moved on the 160-acre tract and improved same by building a house and clearing up and cultivating a part thereof. On November 4, 1918, their second child, John W. Sewell, was born on the 160-acre tract. Appellee paid the taxes on the 160-acre tract, and he and Parthenia used it without any objection on the part of Ab Berry. In fact, Ab Berry expressed himself as being glad they had moved on their own property. They desired to borrow some $400 or more on the property to recondition their home, and, at the suggestion of the bank from whom they borrowed it, Ab Berry joined in the note and mortgage. From the time they moved on the 160-acre tract in 1917, Parthenia Berry Sewell, with her husband and two children, continuously resided upon same openly and notoriously and enjoyed the issues and profits therefrom to the exclusion of Ab Berry, who continued to reside upon the 80-acre tract. On March 24, 1920, Parthenia Sewell died intestate, leaving her husband, appellee, and her two children as her only heirs, who continued to reside upon the 160-acre tract until they moved to Chicago, Illinois. On July 3, 1921, Ab Berry died intestate, leaving surviving him his two grandchildren, the sons of his daughter, Parthenia Berry Sewell, as his only heirs. On the 19th day of August, 1922, appellee applied for and procured letters of guardianship of the estate of his sons, Arthur W. and John W. Sewell, in the probate court of said county, alleging in the application therefor that the two minor sons were the owners of the 160-acre tract. He was residing with his minor sons at the time on the home-

stead tract of 160 acres. In the year 1922, oil was discovered in the vicinity of the 160-acre tract and, in order to develop the oil on said tract, appellee for himself and as guardian of his sons, by consent and order of the probate court, leased the property for an initial cash payment and a royalty of one-eighth of the oil to be produced, from which the fund involved in this suit is a part. The lease was approved by the probate court on the theory that appellee owned a curtesy interest in the land and the sons owned the fee and a homestead interest as heirs of their mother, Parthenia Berry Sewell. On account of the nearness of oil wells to the house on said property, the probate court ordered that the residence be sold and removed, which was done. Subsequently, appellee, with the minors, moved to Chicago and established his residence in that city. On May 7, 1923, appellee applied to the probate court of Cook County, Illinois, for guardianship letters for his minor sons and obtained same. Acting under these letters, he administered the estate of the minors until June 12, 1930, when he resigned, and the Chicago Title & Trust Company was appointed his successor, to whom he accounted for all assets in his hands belonging to his wards. Later, the Chicago Title & Trust Company resigned, and William L. O'Connell was appointed guardian in succession, to whom it accounted for all the assets in its possession belonging to said minors. William O'Connell, as such guardian, was substituted as a party plaintiff and is the appellant in the instant case, and appellee is a cross-appellant herein. During the administration of the estate by appellee in Illinois, he procured an order from the probate court of Cook County to purchase a house for his wards out of the funds in his hands and did so on June 20, 1926, which purchase was approved by said probate court. The value of said 160-acre tract at the time Parthenia Berry Sewell died was not in excess of $480. A suit was brought by appellee against his two sons, who were represented by their next friend in chancery in the superior court of Cook County, Illinois, in which a final decree was rendered adjudging that appellee individually had no right, title, or interest whatso-

ever in the 160-acre tract of land in Ouachita County, Arkansas, and was not entitled to any part of the one-eighth royalty on oil drawn or extracted therefrom, and this decree was pleaded by appellants in the instant case as a bar to appellee again litigating his claim to an interest in said land in the courts of Arkansas. In addition to these undisputed facts, evidence was introduced pro and con tending to show whether Ab Berry surrendered his life estate or curtesy interest in the 160-acre tract to his daughter, Parthenia Berry Sewell.

Based upon the undisputed facts set out above and the additional conflicting testimony introduced by the respective parties, the chancery court found and decreed that Ab Berry surrendered his interest by curtesy in the 160-acre tract to his daughter, Parthenia Berry Sewell, at which time she became the owner in fee simple of the same. Also that, upon the death of Parthenia Berry Sewell on March 24, 1920, title in fee simple to said tract of land passed by descent to Arthur W. Sewell and John W. Sewell, minors, in equal undivided shares, subject to an estate by the curtesy consummate in Arthur Sewell, the father of the minors, which said estate by the curtesy in Arthur Sewell was subordinate to the homestead exemption in said minors during their minority in the N½ of said 160-acre tract, and that appellee is entitled to all earnings or income from royalties received or to be received from the S½ of said 160-acre tract. The chancery court also adjudged that appellant, as guardian for the estate of the minors, pay to appellee $29,250, one-half of the cash consideration received for the lease dated October 11, 1922, together with the earnings thereon from the date received. The chancery court also adjudged that appellee should receive all the earnings received on the royalties from the date of the lease on the S½ of said 160-acre tract and required appellant, as guardian, to file a statement of account within thirty days showing all moneys received by him in royalties and the earnings thereon on the N½ as well as the S½ of said 160-acre tract. The chancery court then appointed the First National Bank of El Dorado curator of the estate of said minors to collect the amount due from the

Gulf Refining Company and to collect all accrued royalties from oil and gas produced and severed from said 160-acre tract in accordance with the terms of the oil and gas lease as well as all royalties to accrue thereunder, and to preserve and invest the corpus and to pay the appellant the earnings from that produced on the N½ and appellee the earnings from that produced on the S½ of said 160-acre tract.

Appellant first contends that appellee acquired no curtesy interest in the 160-acre tract because at the time Parthenia, his wife, died, her father, Ab Berry, had a life estate or curtesy interest therein. Appellee contends that prior to her death, the life estate or curtesy interest of Ab Berry had been surrendered by him to Parthenia and had merged in her reversionary estate, and that at the time she was the owner of the fee simple title thereto. The court found for appellee on this point and correctly so. Ab Berry had allowed his daughter, Parthenia, with her husband, to move on the 160-acre tract, making valuable improvements thereon, and pay the taxes without attorning to him. He treated them as the owners of the property from the day they moved on it, and by his acts and conduct surrendered his curtesy interest therein to his daughter, Parthenia. Under the facts, his interest by curtesy passed to Parthenia by operation of law, although there was no proof of an express surrender, abandonment, or gift by him to her. Parthenia was therefore after acquiring the life estate of Ab Berry, seized of an estate by inheritance in the 160-acre tract, and her husband, appellee, upon her death, was entitled to an estate therein by the curtesy. This court said in the case of *Owens* v. *Jabine*, 88 Ark. 468, 115 S. W. 383, that: "To entitle a husband to an estate by the curtesy, it is necessary that the wife be seized during coverture of an estate of inheritance in the land."

Appellant also argues that, owing to the lapse of time in asserting his right of curtesy, he is barred now from claiming same, and that he has estopped himself from doing so by treating the property as the individual property of the minors. It is true that he acted for many years as guardian of the estate of the minors, but dur-

ing that time he did nothing which operated to their prejudice or which caused them to alter their condition to their injury, which are necessary elements of laches or estoppel. *Reaves* v. *Davidson,* 129 Ark. 88, 195 S. W. 19; *Johnson* v. *Taylor,* 140 Ark. 100, 215 S. W. 162; *Lessor* v. *Reaves,* 142 Ark. 320, 219 S. W. 15; *Reynolds* v. *Cowan Bros. & Hardin,* 148 Ark. 655, 232 S. W. 941.

Appellant also argues that appellee is now precluded from claiming an estate by the curtesy in said land on account of the Illinois decree in which it was decided that he had no interest by the curtesy in the Arkansas land. By inspection of the Illinois judgment pleaded as *res judicata* of the issues involved in this case and asserted as an estoppel of appellee's right to claim an interest by the curtesy in the 160-acre tract, we find that the basic question involved therein was the title to the 160-acre tract situated in Arkansas. The Illinois court was without jurisdiction to determine title to lands in this State, and the adjudication there cannot estop appellee from claiming an interest in real estate in this State nor can the adjudication there be pleaded as *res judicata* of issues here involving title to said land. *Clopton* v. *Booker,* 27 Ark. 482; *Williams* v. *Nichol,* 47 Ark. 254, 1 S. W. 243; *Beauchamp* v. *Bertig,* 90 Ark. 351, 119 S. W. 75.

This brings us to a consideration of when the homestead right vested in the minor children, and whether it extended to the boundaries of the 160-acre tract or to only 80 acres adjoining the dwelling, and whether the homestead interest therein was paramount to the curtesy interest of appellee. Under the Constitution of 1874, the estate of homestead vests in the minor children upon the death of the parent who owned and occupied the land as a residence. *Cowley* v. *Spradlin,* 77 Ark. 190, 91 S. W. 550; *Smith* v. *Scott,* 92 Ark. 143, 122 S. W. 501; *Bruce* v. *Bruce,* 176 Ark. 442, 3 S. W. (2d) 6. In the instant case, the value of the 160-acre tract at the time the homestead right vested in the minor heirs did not exceed $480; hence it extended to the boundaries of the 160-acre tract. *Cowley* v. *Spradlin,* 77 Ark. 190, 91 S. W. 550.

It has been definitely decided by this court that the husband's right of curtesy in the homestead of his wife yields to the right of the heirs to occupy same and enjoy the fruits thereof during their minority. *Thompson* v. *King*, 54 Ark. 9, 14 S. W. 925; *Littell* v. *Jones*, 56 Ark. 139, 19 S. W. 497.

It follows therefore that the trial court erred in finding that appellee is immediately entitled to any part of the funds in question or the income or interest thereon or in other funds arising from the one-eighth royalty received under the lease from its date or any part of the initial cash consideration paid for the lease during the minority of Arthur W. and John W. Sewell, and in appointing the First National Bank of El Dorado curator for Arthur W. Sewell and John W. Sewell to collect and administer upon any of the funds in question, but should have adjudged that the funds paid into the registry of the court by the Gulf Refining Company be paid to appellant, the duly appointed and acting guardian of said minors, upon the execution of a good and sufficient bond to preserve the corpus of the fund, and should have stopped at that. Appellee's curtesy right to enjoy the income from the funds will not mature until the younger heir attains the age of twenty-one years and may never mature should he die before the younger heir reaches that age. In that event it would all pass to the appellants. The decree rendered by the chancery court is reversed, and the cause is remanded with directions to the chancery court to enter a decree in favor of appellant for the funds involved upon the execution of a good and sufficient bond to preserve the corpus of the funds now in the registry of the court.