Ronald PRICE, Patsy Price NORRIS
and Sandara Price CLARK *v.* Edith M.
PRICE, Administratrix

75-31                                   527 S.W. 2d 322

Substituted Opinion on Denial of Rehearing
delivered September 22, 1975

*Wilson, Blaney & Dougherty, P.A.*, by: *Mike Wilson,* for appellants.

*Stubblefield & Matthews,* for appellee.

JOHN A. FOGLEMAN, Justice. This is the second appeal by the three heirs of Carrol W. Price who are the step-children of his widow and administratrix, Edith M. Price, in their efforts to force her to account for her thirteen-year administration on his estate and to obtain their share of the property of their father who died December 4, 1960. See *Price* v. *Price,* 253 Ark. 1124, 491 S.W. 2d 793. On the first appeal we disallowed the widow's claim that the entire 3.62-acre tract on which the deceased had operated a trailer park in Jacksonville constituted her homestead. We also held that the widow was entitled to her proportionate part of the rents from that portion of the land not a part of the homestead along with the rents from the homestead itself, citing Ark. Stat. Ann. § 62-2501.3 (Repl. 1971) and *Mayo* v. *Arkansas Valley Trust Co.,* 132 Ark. 64, 200 S.W. 505. We took pains to point out the duty of the administratrix, as a fiduciary, to act toward the heirs in the utmost good faith. We remanded the case for further proceedings. It is essential to the treatment of the points for reversal that we outline these proceedings in considerable detail.

Appellee's first inventory was filed on May 29, 1973. One acre of the 3.62-acre tract, which constituted a trailer park at the time of the death of Carrol Price and has been operated as such ever since, was listed as homestead at a value of $1,850. Edith M. Price, as widow, incorporated into her inventory as administratrix an application to have this tract reserved from sale as homestead "as directed by the March 5, 1973 opinion of the Supreme Court of Arkansas." The remaining 2.62 acres was listed with the value "undetermined". Personal property was listed at a total value of

$327.50. Appellants filed exceptions, alleging that the widow was entitled to no more than one quarter of an acre as homestead, saying the value of the property was far in excess of $2,500, and that the personal property was grossly undervalued. On November 8, 1973, the widow, for the first time, filed a petition for allotment of dower, saying that she was entitled to 1.21 acres in addition to the homestead claimed in the inventory which she alleged had been duly reserved from sale "pursuant to *Price* v. *Price,* 253 Ark. 1124, [491 S.W. 2d 793]." Appellants responded, denying the allegations relating to the homestead.

On March 19, 1974, appellants filed their petition for removal of appellee and revocation of her letters, alleging that she had consistently failed to perform her duties and had not only failed to file a timely inventory, but had filed a grossly erroneous one, that she had claimed a homestead interest in the real estate in excess of the statutory limitation and in knowing violation of this court's opinion on the previous appeal, and that she had not only failed to satisfactorily account for all the personal property of the estate, but had made no effort to make an accurate and true accounting.

On March 28, 1974, the court appointed Richard Adair, Myron Traylor and Bart Gray as commissioners to lay off and designate the widow's dower by metes and bounds. The report of these commissioners was filed April 5, 1974. It described 1.21 acres as dower, saying that these lands have an estimated value of one-third of the 3.62 acre tract. On May 2, 1974, the probate court entered an order confirming the report of the commissioners. Exceptions to the report were filed May 8, 1974, alleging that the property was not susceptible to division in kind, that the commissioners failed to view the property and merely signed a report presented to them by Edith M. Price, that the commissioners failed to take into account the income from the respective parcels of the tract and that the whole tract should be rented out pursuant to Ark. Stat. Ann. § 62-716 (Repl. 1971) with one-third of the rentals paid to the widow as dower.

On August 2, 1974, Mrs. Price filed an accounting to cover the period from January 1, 1961, ending December 31, 1973. It was not in any respect in compliance with the re-

quirements of Ark. Stat. Ann. § 62-2803 and 2804 (Repl. 1971) and little nearer the form prescribed for an accounting than was the one before us on the earlier appeal. It does not comply with the requirements for an accounting mentioned in our opinion on that appeal. In this accounting the widow again claimed all the personal property as widow's allowances. She showed rentals of the real property totaling $15,984.69, relying completely upon her individual income tax returns, which she considered too bulky to attach. She claimed that one half or more of the rentals were attributable to the one acre she claimed as homestead and that $3,684.47 was the portion of rents due her as dower, leaving only $2,-584.66 for which she was accountable. In this accounting she said that there was due each stepchild the sum of $66.27 per year but that substantial duties she performed in operating the trailer camp greatly exceeded this amount and requested that the court allow her a reasonable compensation for such services on account of the real property, and asked allowance of fees for her attorney and an accountant employed by her without court authorization. She stated that, prior to the date set for hearing on the accounting, "the administratrix will file a petition for statutory allowances and a petition to sell the real property of the estate."

Exceptions were filed August 9, 1974. Appellants alleged that the accounting was not in statutory form or in compliance with requirements for accounting; denied the allegations as to widow's allowances, alleging that certain personal property was the property of the trailer court business; denied the widow's entitlement to one acre as homestead; claimed interest; denied that the widow was entitled to the proportions of the rent she claimed; denied her right to employ counsel on her own terms and an accountant without permission of the court.

On August 16, 1974, appellee filed a petition alleging that it was necessary and to the best interest of the estate that its real property be sold subject to homestead and dower of the widow. On the same date, she filed a petition for award of all furniture, furnishings, appliances and related items necessary for family use and additional property of the value of $1,500. It was ordered that the petition for sale of the real

estate be heard on September 3, 1974.

On August 20, 1974, a petition was filed by appellants demanding that the probate clerk appoint three commissioners pursuant to Ark. Stat. Ann. § 62-603 (Repl. 1971) to appraise the homestead claimed, and praying that the same be sold if valued in excess of $2,500. On the same date the Clerk of the Probate Court appointed Bartus M. Gray, James Peacock and Doug Wilkinson as commissioners to appraise the homestead. Still on the same day, appellants filed their response to the petition of the administratrix for sale of the real estate, alleging once more that the widow was entitled to no more than one-quarter acre of the real estate as homestead, and that the petition alleged no statutory grounds for the sale. They also filed a response to the petition for statutory allowances, asking that the widow be denied statutory allowances because of her mismanagement of the estate, conversion of rents and profits and failure to account.

On August 28, 1974, appellee filed her objections to the appointment of commissioners to appraise the homestead, saying that summons on the petition was not served on her; that the time fixed for trial and disposition was too short to permit compliance; that she had filed an accurate description of the one acre of land claimed as her homestead "as directed by the opinion of the Supreme Court in the case of *Price* v. *Price*, 253 Ark. 1124, 491 S.W. 2d 793"; that the homestead was duly reserved from sale and that such claim of homestead was served on appellant Roland Price on May 29, 1973; that on May 2, 1974, an order assigning dower was entered, no appeal was taken from this order approving the report of the commissioners, and that more than 90 days had elapsed since its entry; and that no notice was given to Edith M. Price concerning the appointment of commissioners.

Also on August 28, 1974, the appraisement of the commissioners was filed stating that the fair market value of the one acre claimed by Mrs. Price as homestead was $29,403. On the next day the administratrix moved the court to strike the appraisement because it was filed after Mrs. Price had filed objections to the petition for appraisal and because the one-acre homestead had become vested in the widow and reserved from sale on May 29, 1973.

A hearing was held on September 3 and 4, 1974, apparently on all pleadings. At the very outset the probate judge questioned the completeness of the accounting, and appellants objected to testimony by appellee to vary, explain or contradict the accounting filed.

It was agreed that the three commissioners who signed the appraisal of the homestead, if called to testify, would verify the statements made in the appraisal. Appellee objected to the testimony of the commissioners who laid off dower, however, on the ground that no motion to set aside the order of May 2, 1974, approving the report of the commissioners, had been filed within 90 days. Actually, it appears that the objection was that the hearing on appellants' exceptions to the order on the report of the commissioners had not been heard within 90 days after it was entered, so it had become final insofar as action of the trial court was concerned because of the provisions of Ark. Stat. Ann. § 22-406.3 (Supp. 1973).

Mrs. Price testified that the value of her services would be such that there wouldn't be anything left after deducting that value from the rents. She presented her Exhibit 1, which was a statement of net income from the trailer park as disclosed by her individual income tax returns. The exhibit was prepared by an accountant on the assumption that the returns (which he did not prepare) were correct. The accountant said that no books had been kept on the operation but that Mrs. Price had in her possession a lot of receipts and paid bills. He had attempted to allocate rents to the one-acre "homestead" and the remaining lands simply on the basis of Mrs. Price's statement that the rents from the homestead exceeded one-half of the total.

Mrs. Price admitted a tendency to "draw a blank" when she was questioned "fast" and an inability to "remember things". She could recall that she had testified both in 1962 and in 1972 that she had commingled the proceeds collected from the property and her social security payments, yet she claimed that virtually all expenditures she made, including those for improvements and repairs to the property, had been made from money she received as social security and that she

used the rent proceeds only when she paid a large liability which exceeded her balances from social security payments. She had testified in 1972 that after she paid water bills, she supposed that the remaining $560 per month from rents went for groceries. She did say then, however, that she did have to pay for whatever needed repairing. In 1962, she had testified that the improvements were made from the profits of the business and her money from social security. Her latest testimony still indicates a commingling of funds.

When it was pointed out that, since the net income shown by the accountant was taken from Mrs. Price's individual income tax returns, substantial amounts taken as depreciation on those would actually result in a credit to the administratrix for those amounts, her attorney volunteered that the compensation to which she was entitled would far exceed any net amount accruing to the beneficiaries plus depreciation. The probate judge appropriately commented that this was speculation.

Other testimony and proceedings will be referred to in treatment of the specific points for reversal, in all of which we find merit.

I

## THE TRIAL COURT ERRED IN ALLOWING THE ADMINISTRATRIX' CLAIM OF HOMESTEAD, AND REFUSING TO ORDER A SALE OF THE HOMESTEAD PURSUANT TO ARK. STAT. § 62-601.

We do not agree with appellants that the value of the tract claimed as homestead, as between the widow and heirs, is to be determined on the date it is claimed by the widow. The Alabama case relied upon by appellants, *Moore v. Scharf*, 17 So. 933, 110 Ala. 518 (1895), is really not in point. It involved construction of Alabama statutes involving a debtor's, not a widow's, homestead in a case involving an issue as to whether the value of the debtor's homestead should be determined at the time of trial or at the time it was claimed by the debtor. The court determined that the critical time in that case was the time of trial. The Alabama courts have repeatedly held, however, that the value of the homestead, when

claimed by a widow, is to be determined as of the date of decedent's death. *Alford* v. *Claborne,* 229 Ala. 401, 157 So. 226 (1934); *Walton* v. *Walton,* 256 Ala. 236, 54 So. 2d 498 (1951); *Matthews* v. *Matthews,* 253 Ala. 116, 43 So. 2d 131 (1949); *Haynes* v. *Haynes,* 236 Ala. 331, 181 So. 757 (1938); *Sims* v. *Kitchens,* 233 Ala. 484, 172 So. 638 (1937); *Gray* v. *Weatherford,* 227 Ala. 324, 149 So. 819 (1933); *Ticer* v. *Holesapple,* 226 Ala. 271, 146 So. 614 (1933).

The Supreme Court of Nebraska has also held that the value at the date of the decedent's death governs, relying upon what it called the well settled rule that this value governs when a creditor claims that the homestead exceeds the statutory limit on value. These holdings are harmonious with our result in *O'Connell* v. *Sewell,* 191 Ark. 707, 87 S.W. 2d 985, where we held that the children's homestead extended to an entire 160-acre tract owned by their mother at the time of her death, to the exclusion of her widower's curtesy rights, because the entire tract was worth only $480 when she died, disregarding the fact that its value had substantially increased because of royalties from an oil lease. But appellants' reliance is not placed solely upon this contention. They contend, and we agree, that the evidence clearly shows that the homestead claimed was in excess of $2,500 in value.

We pointed out on the first appeal that the burden was on the widow to establish the value and extent of the homestead and that she could not unilaterally and summarily select the part she claimed as homestead out of the whole tract in arbitrary or capricious disregard of the rights of others. Appellee seems to have proceeded upon the theory that this court directed that she claim one acre as her homestead. There is no justification for this position. We specifically pointed out that the homestead right was limited to a value of not more than $2,500, if in excess of one quarter of an acre. Where it exceeds that value, it is limited to one quarter acre. See also Art. 9, § 5, Constitution of Arkansas. *Barnhart* v. *Gorman,* 131 Ark. 116, 198 S.W. 880.

It is significant that Mrs. Price testified at the hearing in 1962 that the property was in the industrial area inside of Jacksonville city limits only two blocks from the interstate

highway on the access road and that two apartments on the property brought $50 per month each in rents. At the 1972 hearing, prior to the first appeal, she directed her attention to the one-fourth acre upon which the dwelling house she and her husband were living in at the time of his death was located, saying that two apartments and one trailer space thereon were then renting for $190. At the hearing in September 1974, her son, whom she called as a witness, said that only one of these apartments was on the one acre she claimed as homestead and the other was on the tract she claimed as dower.[1] The apartment he said was on this one acre seems to have been in the Price dwelling house, according to the testimony of Mrs. Price in 1962. Mrs. Price testified that the one acre claimed as homestead was the best property to rent. Her eighteen-year-old son testified that there were nine trailer spaces and one apartment on the one acre Mrs. Price had claimed as homestead, and six trailer spaces and one apartment on the 1.21 acres she claimed to have been assigned as dower. On the remaining lands, which he said were susceptible to flooding, there were three trailer spaces and room for two others, but no gas line to those spaces. He said all spaces rented for the same amount, but that the spaces on the one-acre homestead were rented most of the time and that most vacancies occurred on the lands the widow did not claim as either dower or homestead. He said the one acre claimed as homestead had 339 feet of frontage. It seems clear from the testimony that the dwelling house is located on the most valuable part of the property if the street frontage is included.

There was absolutely no evidence to support the $1,850 value assigned by Mrs. Price to the one-acre tract claimed by her. It was demonstrated by cross-examination of Mrs. Price that she had no basis at all for that figure. She admitted that it was the most valuable part of the property and that she did not know what it was worth when her husband died. When pressed, she "supposed" that she and her attorney decided what the one acre was worth and agreed on the figure used. She recalled that some of the original tract had been sold for highway right-of-way, but could not remember the consideration.

---

[1]By her response to a request for admissions, Mrs. Price confirmed this statement.

The probate judge, after hearing this evidence, held that, under our holding on the first appeal, Mrs. Price was entitled to the one acre claimed by her, saying that it was not worth more than $2,500 at the time of Carrol Price's death. In this, he was clearly in error. When appellants' attorney protested that they had not presented their proof on the point, the court permitted them to offer it, apparently as a proffer.

Appellant, Sandra Price Clark, testified that she was thirteen years of age when her father died and that the trailer park had been built by her father, brother, sister and herself and that her father had paid about $2,000 for the real estate. She remembered that her father had sold a strip 12' x 250', directly in front of the acre claimed as homestead by Mrs. Price, to the highway department for right-of-way for $4,000 in 1957. She said that the gross rental on that one acre amounted to about $300 per month when her father died. She was of the opinion that the one acre had a value of $10,000 to $20,000 at the time of her father's death.

Patsy Price Norris was twenty years of age when her father died. She said that the trailer park was then only five years old and in good condition, and that it enjoyed 90% occupancy of the 25 trailer spaces. She said that the property then had a value of $20,000 and that the claimed homestead took up two-thirds of the frontage. She referred to the "Texaco property" on the other side of the freeway which she said sold for $142,000 for one acre. She said that she had held a job in the real estate business at one time and had a general familiarity with the income approach to property evaluation. Using this approach, by rule of thumb, she used a $10 per month net per trailer space and assigned a value of $14,400 to the one acre. She said that when her father died the net income per space was at least $10 per month.

After hearing this testimony, the probate judge seemed to be in doubt about his previous ruling, and said that it remained undecided whether the whole property should be sold and $2,500 given the widow in lieu of homestead or whether the homestead should be set aside to her. Nevertheless, the court ordered a sale of the property, pursuant to appellee's petition, subject to the dower and homestead the widow had claimed.

Even though we might find weaknesses in the value evidence on behalf of appellants, it, together with admitted facts relating to location and advantages of the property, certainly preponderates over that of Mrs. Price, which had no reasonable basis at all.

It is clear to us that the widow has failed to meet the burden of showing that she was entitled to more than one-fourth acre homestead. It is also clear that she has borne this burden for nearly 15 years and that appellants' contention that she was not entitled to more than one-fourth acre should have been well known to her, at least since a hearing held on June 8, 1972. At that hearing her own attorney questioned her specifically about the buildings located on the quarter acre on which her dwelling house was located. It is not absolutely clear from the record that Mrs. Price claimed that she was entitled to more than one-fourth acre as homestead prior to her brief on the first appeal. She chose not to offer any testimony of the value of the one acre she claimed as homestead other than her own at the hearing which resulted in the order from which this appeal is taken, in reliance upon the contention that the homestead was allowed by the county clerk on May 29, 1973, the same day Mrs. Price's claim was filed and that this claim was approved by the Probate Judge on June 1, 1973 by an endorsement "Examined and Approved." This endorsement appears on the reverse side of appellee's inventory and we certainly cannot assume that it had the effect of allowing the homestead listed in the inventory or foreclosing the right of appellants to object. This they did pursuant to § 62-603. The one-acre tract claimed by Mrs. Price did not vest in her merely by the clerk's reservation under § 62-602 (Repl. 1971). This statute does not provide for vesting until commissioners appointed upon the written application of an interested person have reported and then the clerk's entry vesting title is subject to contest in the probate court. Ark. Stat. Ann. § 62-604 — 608 (Repl. 1971).

Appellee's attorney did state that there were witnesses standing by who would testify that this acre was worth less than $2,500 but came no nearer to actually offering her testimony than an unsuccessful attempt to obtain appellants' stipulation that one of them would testify that the tract was worth $1,500. Under these circumstances, appellee is in no

position to complain if we limit our consideration to testimony that was offered in the trial court, when the record is clear that she had ample opportunity to put other testimony in the record without prejudice to her other contentions. Otherwise, this matter could shuttle back and forth between the probate court and this court for an indeterminable additional period of years.

We cannot say, however, that the court erred in not ordering a sale under Ark. Stat. Ann. § 62-605. The commissioners erroneously fixed the value, so a sale upon that basis would have been erroneous. In any event, the widow is entitled to have one quarter of an acre on which the dwelling house is situated exempted from sale.

## II

### THE TRIAL COURT ERRED IN ALLOWING THE DOWER CLAIM OF THE ADMINISTRATRIX.

The error in confirming the allotment of dower is obvious, unless we accept appellee's contention that appellants were barred by passage of 90 days after the order approving the commissioner's report without appellants' objections having been heard. The objections were well taken. There is not even a pretense that the commissioners followed the statutes. See Ark. Stat. Ann. § 62-711 (Repl. 1971). Their testimony shows that Mrs. Price approached each of them separately with a plot plan with the homestead she claimed and the dower to be allowed already laid out, and that little if any regard was given to property values, the only consideration being that 1.21 acres was one-third of the area of the whole tract. Two of the commissioners signed the report only upon the representation of Mrs. Price that the heirs had agreed to this allotment. Only one of them even viewed the property. The layout was drawn by one of Mrs. Price's sons.

Appellee's reliance upon Ark. Stat. Ann. § 22-406.3 as a bar to appellants' objections is misplaced. This section was a part of Act 358 of 1969, by which the "term of court" concept was abolished for chancery and probate courts. The section invoked only made final orders and decrees of a probate court have the same force and effect upon the expiration of 90 days

after their filing with the clerk as they would previously have had upon expiration of the term of court at which rendered. This is not such an order. In the first place the order alloting dower recited that it was entered over the objections of' appellants. Within six days thereafter the exceptions of appellants were filed. There was considerable discussion about the reasons these exceptions were not earlier heard but the probate judge finally ruled that the order had not become final, but sustained the report of the commissioners on the merits.

We need not concern ourselves with the correctness of the court's holding in this regard, because the expiration of the term has not had the same significance in probate courts as in others since the adoption of the Probate Code. The drafters obviously knew that there was need for greater flexibility in that court in regard to finality of orders in the process of administration of an estate. For good cause, the probate court may vacate or modify any order, or grant a rehearing thereon (except for any order as to which an appeal has been taken, or motion to set aside an order of probate of a will after the time allowed for contest) at any time within the time allowed for appeal after the final termination of the administration of the estate of a decedent. Ark. Stat. Ann. § 62-2015 (Repl. 1971). When an appeal is taken from the order of final distribution, all prior appealable judgments and orders to which appellant has filed objections within 60 days after the order or judgment was rendered, with certain exceptions not here applicable, may be reviewed on appeal. *Brooks* v. *Baker*, 242 Ark. 128, 412 S.W. 2d 271. Thus, the fact that appellants did not appeal from the order approving the commissioner's report prior to the probate court's final order, even though they might have done so, does not constitute a bar to the present appeal. Authorities and statutes which might indicate to the contrary but antedate the Probate Code are not controlling.

It is true that after cross-examining each of the three commissioners extensively appellee moved to strike their testimony on the ground that no appeal had been taken from the order assigning dower. The court's ruling seems ambiguous. The court did not grant the motion as to any witness. As to the first, the probate judge simply said, "Let it

go in for the record." As to the second, the probate judge indicated that he understood the motion and remarked, "We will let it go in for the record." As to the third and last, the court simply said that the motion would be noted. Even if this ambiguous language can be taken as excluding this testimony, it would have been improperly excluded, for the reasons just stated. Appellate review in probate cases is de novo, just as it is in equity. Ark. Stat. Ann. § 62-2016 g (Repl. 1971). On trial de novo on appeal in chancery cases, improperly excluded evidence will be considered. *Greer v. Davis,* 177 Ark. 55, 5 S.W. 2d 742; *Adams v. Adams,* 177 Ark. 374, 6 S.W. 2d 290.

## III

## THE TRIAL COURT ERRED IN ACCEPTING THE ADMINISTRATRIX' PURPORTED ACCOUNTING FOR THE YEARS 1961 — 1973.

It was only after a petition to cite the administratrix to show cause why she should not be removed that she condescended to file an accounting some fifteen months after the remand in the first appeal. In spite of the fact that she testified at the 1972 hearing that she had all receipts for the past ten years and all the books and records, she listed only the net income without any attempt to state the extent and amount of expenditures for which she claimed credit and without attaching any vouchers, receipts or any documentary evidence of any kind, satisfying herself that whatever might be shown to be due by her should be offset by compensation due her.

In spite of the probate judge's obvious dissatisfaction with appellee's actions, expressed by his questioning the failure of the accounting to cover the period up to the date of its filing, and by his saying that the accounting was otherwise incomplete, that the widow's attempt to offset the value of her services against the rents, without showing the amount due her, was speculative, that it looked as if she should be removed so someone could make an accounting that a judge could make "heads or tails of", that the whole thing was a confused, conglomerated mixup and that no one could tell to

what she or the other parties were entitled, and, after hearing Mrs. Price's testimony, that the accounting was not sufficient and that it looked as if she should have to show gross income and expenses, he somehow was eventually sufficiently satisfied by this odd approach to approve the accounting.

Appellee puts great store upon her offer in the trial court of two file folders containing copies of paid bills and receipts. This offer was not made until after the hearing on the accounting had been concluded, when neither appellants nor their attorney had any opportunity to examine them. She also accords great significance to the fact that she had previously furnished appellants' counsel with copies of her personal income tax returns and that they were made a part of her accounting at the hearing. Even so, she did not abstract these returns after appellants had failed to do so. Disregarding this, they do not comply with Ark. Stat. Ann. § 62-2804 in many respects. There are no vouchers. They are not in any way referred to in her "Accounting of Personal Representative" except to reflect the income she had received from the trailer home park and apartments. Examination of those returns discloses that a deduction for depreciation of the improvements on this property and on items of personal property that she claimed and such items as "Utilities" are shown in a lump sum. On the first appeal, we pointed out the deficiency in the purported accounting and the requirements to be met. We have no hesitation in holding that the present accounting is also deficient in many of the same respects. Mrs. Price has obviously failed to recognize that, as administratrix, she has duties and responsibilities to the heirs of Carrol Price as a fiduciary. The order approving the accounting must be set aside.

## IV

THE TRIAL COURT ERRED IN ORDERING THE REAL PROPERTY OF THE ESTATE SOLD SUBJECT TO THE DOWER AND HOMESTEAD CLAIMS OF THE ADMINISTRATRIX.

Perhaps it is in the best interest of the estate that the real property of the estate be sold. We do not agree with appellants that it can be sold only to pay debts. See Ark. Stat.

Ann. § 62-2704 (Repl. 1971). *Doss* v. *Taylor,* 244 Ark. 252, 424 S.W. 2d 541. Furthermore, we are not sure that the estate has no debts. We recall that we affirmed a judgment fixing a lien on the property in favor of Mrs. Price for debts of decedent paid by her on the previous appeal. We do not know whether these are a part of the disbursements for which appellee seeks credit, in view of the obscurity of the identity of these items. At any rate, we are sure that neither of the parties would desire or receive any benefit from a sale until matters pertaining to dower and homestead are settled, so the court's order of sale will be set aside.

## V

## THE TRIAL COURT ERRED IN GRANTING THE WIDOW STATUTORY ALLOWANCES AND REFUSING TO MAKE SUCH ALLOWANCES TO APPELLANT, SANDRA PRICE CLARK.

We really cannot say that appellants have demonstrated reversible error in the matter of statutory allowances. Appellants complained that the personal property had been undervalued. Testimony by one of them was to the effect that some property was not listed. Still the widow was entitled to dower in the personalty to the extent of one third. Ark. Stat. Ann. § 61-202 (Repl. 1971). She valued the total at $327.50. As we understand the abstract of the record it appears that appellants claim the personal property had a value of approximately $2,345. Of this, Mrs. Price would have been entitled to $781.67 leaving only $1,563.33. The law governing widow's allowances at the time of Carrol Price's death allowed her all furniture, furnishings, appliances, implements and equipment reasonably necessary for family use and occupancy. Sec. 10, Act 255 of 1951. Again using appellants' values, these items would total some $1,590. She then would have been entitled to an additional $1,500 in personal property for herself and the minor children (Sec. 10, Act 255 of 1951), two of which were her own sons. Of course, some part of the allowances should have gone to appellant Sandra Price Clark, but it seems to us that those items to which the widow was entitled in her own right exceeded the total value of the personal property, even if we apply the values appellants would have us use.

Of course, it is necessary that we reverse the orders and judgments of the probate court before us on appeal, except as to the widow's rights in the personal property, and remand the case for further proceedings. In this connection it has become obvious that appellee is unsuitable for the discharge of the trust involved in acting as personal representative and that she has failed to perform duties required of her by law. Her unsuitability to act as personal representative is demonstrated by the fact that, as administratrix, she has persistently acted in the furtherance of her own interests in a manner to deprive her step-children of any benefits from their rights in their father's property and that she has been recalcitrant about compliance with her fiduciary responsibilities and the directions of the court. She has failed to file a satisfactory account, in spite of the fact that the probate judge admonished her about this some thirteen years ago. We do not see how this matter can ever be concluded as long as Mrs. Price remains as administratrix. We remand the case for further proceedings with instructions to the Probate Court of Pulaski County to remove Mrs. Price as administratrix of the estate. See Ark. Stat. Ann. § 62-2203 (Repl. 1971). Obviously, she cannot be allowed compensation in an indefinite amount by simply saying that her services are worth more than the heirs, collectively, are entitled to, as she persistently contends. Her entitlement to compensation is very questionable in view of Ark. Stat. Ann. § 66-2208 c (Repl. 1971), the fact that the real property has not, (at least prior to the court's order of sale) become an asset in the hands of the personal representative, [See Ark. Stat. Ann. § 62-2401 (Repl. 1971)] the fact that she has not been authorized to operate a business [See Ark. Stat. Ann. § 62-2410 (Repl. 1971)], and the fact that she will receive and retain all the personal estate of the decedent. Nevertheless, the trial court has never made any determination as to the amount or elements of compensation of appellee, so this question may be determined upon remand.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion and with our opinion on the earlier appeal.

BYRD, J., not participating.