**In re Joseph Benjamin HOGAN and Thelma Jeanne Hogan.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,**

**v.**

**Joseph Benjamin HOGAN and Thelma Jeanne Hogan, Defendants.**

**Bankruptcy No. 96–40689 S.**

**Adversary No. 96–4070.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

April 21, 1997.

Scott Frick, Memphis, TN, for Plaintiff.

Stuart W. Hankins, Basil Hicks, Little Rock, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARY DAVIES SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the complaint objecting to discharge of the debtor pursuant to 11 U.S.C. § 727(a)(2)(A). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(J).

On April 15, 1994, United States Fidelity and Guaranty Company (USF & G) filed a complaint against the Hogans in the U.S. District Court for the Eastern District of Arkansas, seeking indemnification of a bond on which USF & G had been required to pay as surety. Subsequent to the filing of that case and service upon the debtors, the debtors made the following transfers:

1. On June 3, 1994, the Debtor's sold their recreational home located in Greers Ferry Arkansas to the wife's brother for $60,000.

2. On June 16, 1994, the debtors transferred a rental house to their attorney.

3. On July 19, 1994, the wife cashed her Individual Retirement Account in the amount of $60,097.85.

4. On July 29, 1994, the debtors sold their residence for $99, 445.20.

5. During November 1994, the debtors mortgaged their new residence as collateral for their son's loan from a commercial lender.

6. On February 21, 1995, the debtors transferred their interest in farmland located in Faulkner County, Arkansas, to their son.

On July 29, 1994, the debtors purchased their current residence for $229,000, tendering approximately $220, 000 cash at the closing.[1] The debtors were not required to obtain a loan from a commercial lender to purchase this home, but were able to pay cash from their own resources in the transaction. When the debtors filed this bankruptcy case, on February 23, 1996, they claimed the new home as exempt.[2]

 The discharge in bankruptcy is the foremost remedy to effectuate the "fresh start" which is the goal of bankruptcy relief. *Ray v. Graham (In re Graham)*, 111 B.R. 801, 805 (Bankr.E.D.Ark.1990). The burden is upon the objecting party to prove *all elements* of the statute setting forth grounds for denying discharge. *Graham*, 111 B.R. at 805 (emphasis added). The first issue for the Court is the standard of proof to be applied. The defendants, despite the analysis and dicta found in *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), in which the Supreme Court held that the preponderance of the evidence standard applies in all section 523(a) proceedings, including fraud, assert that the relevant standard in a section 727(a) action is proof by "clear and convincing" evidence. Every circuit court and virtually every other court to decide this issue has ruled that the relevant standard in a section 727 case is proof by the preponderance of the evidence. *See. e.g., Barclays/American Business Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir.1994); *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 250 n. 17 (4th Cir.1994); *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir.1992); *In re Serafini*, 938 F.2d 1156, 1157 (10th Cir.1991). This Court will follow the cogent reasoning of these cases and require a party objecting to discharge prove its case by a preponderance of the evidence.

 Section 727(a), provides as follows:

The court shall grant the debtor a discharge, unless,

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of petition.

11 U.S.C. § 727(a)(2)(A). Thus, in order to meet their burden under 727(a)(2)(A), plaintiff must show:

(1) a transfer of property occurred;

(2) the property was property of the debtor;

(3) the transfer occurred within one year of the filing of the petition; and

(4) the debtor had, at the time of the transfer, intent to hinder, delay or defraud a creditor. Although the debtors did not raise as an issue the fact that the transfers occurred more than one year prior to the filing of the petition, the Court directed briefs on the issue.

 The primary dispute in this case is whether the debtors had the requisite fraudulent intent to hinder, delay or defraud a creditor. The element of intent to deceive involves a two-part inquiry. First, the debtor's actual intent must be found as a matter of fact from the evidence presented. Since a debtor rarely, if ever, admits to a fraudulent intent, the objecting party must generally rely on a combination of circumstances which suggest that the debtor harbored the necessary intent. The Court may then draw an inference from this evidence. *In re Van*

---

1. Purportedly not having the full amount of the cash, the seller "lent" them the $9,000 difference.

2. On February 27, 1995, the debtors filed their first bankruptcy case under Chapter 13. This case was ultimately dismissed on January 5, 1996. The debtors' second bankruptcy case was filed under Chapter 7 on February 23, 1996. This adversary proceeding objecting to the debtors' discharge under section 727 was filed in the second case on April 25, 1996.

*Horne,* 823 F.2d 1285, 1287 (8th Cir.1987); *United States v. Vertac Chemical* Corp., 671 F.Supp. 595, 617 (E.D.Ark.1987)(Wood, J.) ("[F]rauds are generally secret, and have to be tracked by the footprints, marks, and signs made by the perpetrators, and discovered by the light of the attending facts and circumstances."). The second prong of the inquiry involves a determination of whether the intent is sufficiently abusive to merit denial of discharge.

■■■■ The Court finds that there was actual fraud, *i.e.,* that the transfers were made with the intent to hinder, delay, or defraud their creditors. Since fraud can rarely be demonstrated by direct evidence, the courts generally look to certain factors, or "badges of fraud" to make the determination of whether fraudulent intent exists. Federal law and Arkansas law use the same factors, looking to whether ·

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was concealed;

(4) before the transfer occurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor concealed other assets;

(8) the value received for the transfer was not reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made; and

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

Ark.Code Annot. § 4–59–204(b)(1)–(10); *Brown v. Third National Bank (In re Sherman),* 67 F.3d 1348 (8th Cir.1995); *Graven v. Fink (In re Graven),* 936 F.2d 378, 383–84 n. 8 (8th Cir.1991); *United States v. Johnston,* 245 F.Supp. 433 (W.D.Ark.1965). It is not necessary that all of these factors be present. Indeed, fraud has been found upon as few as four of these factors. *See Bank of Sun Prairie v. Hovig,* 218 F.Supp. 769 (W.D.Ark. 1963); *see also Brown v. Third National (In re Sherman),* 67 F.3d 1348 (8th Cir.1995)(five badges of fraud). It is not the mere number of badges present which indicates fraud, but, rather, it is the "confluence of several [which] can constitute conclusive evidence of an actual intent to defraud." *In re Sherman,* 67 F.3d at 1354.

In this case, there are not only a number of badges present, these badges are multiplied by the large number of transfers made. Three of the six transfers were made to members of their immediate family, and a fourth was made to the attorney advising them. In the immediate time period preceding the transfers, the debtors had been sued by USF & G. The transfers constituted virtually all of the debtor's assets, and, within the meaning of the Bankruptcy Code, the debtors were rendered insolvent. It is also questionable whether the debtors relinquished control of the assets in many of these transfers. While control of their home and a rental home were relinquished, the debtors continued to maintain control over the recreational home, the farm land through their son, and certainly, the cash obtained from the liquidation of the IRA Account. It is also questionable whether reasonably equivalent value was given in several of these transactions. There was insufficient proof of the value of the recreational home, and the son's payment of the father's corporate debts is incongruous. No value was given for the grant of a mortgage on their current home; that was simply a gift to their son, notwithstanding the assertion that he is making the mortgage payments.

Although not among the nonexclusive listing of the badges, the Court notes there are other circumstances which indicate fraud. Specifically, at the time the debtors consulted with their counsel, transferred one of their major assets to him, and were busily transferring the remainder of their assets, the debtors were already considering filing a bankruptcy case. The debtors' own explanations as to why the assets were transferred themselves are indicative of fraud. The debtors claim that they needed the money to

pay bills. However, despite being apparently so without funds, they were able to pay on July 29, 1994, $230,000 in cash to purchase a residence more than twice the value of the long-time family homestead they sold on July 28, 1994. This was a substantial upgrade in housing for a couple who were purportedly having difficulty paying their bills.

Finally, the debtors did not present a demeanor consistent with truthfulness. For example, the debtor husband made much of the fact that he had been diagnosed with cancer at this time. Indeed, on cross-examination, when he could not remember particular facts, he raised as an excuse, his battle with cancer. The Court notes, however, that at the same time he claimed he was confused due to his medical condition, he was also able to very deliberately and methodically transfer all of his assets from the reach of his creditors.

The large number of transfers, combined with the badges of fraud which attach to the majority of the transfers overwhelmingly support the plaintiff's objection to the debtors' discharge based upon the fraudulent transfers of assets. All of this said, however, one important element of proof is missing. The statute expressly requires that the transfers must have occurred within one year prior to the filing of *the petition* in bankruptcy. 11 U.S.C. § 727(a)(2)(A). Here, the relevant date is February 23, 1996, the date the second case was filed.[3] Since the statute states the time limitation as an element of proof, plaintiff's assertion that this is an affirmative defense which has been waived is without merit. Since all of the transfers occurred more than one year prior to the filing of the bankruptcy case, the Court has no choice but to dismiss the complaint and permit the debtors' dis-

charge to be entered. *Ray v. Graham (In re Graham)*, 111 B.R. 801, 805 (Bankr.E.D.Ark. 1990).

**ORDERED** that judgment will be entered in favor of the debtors.

**IT IS SO ORDERED.**

---

**3.** The court is not aware of, and the parties do not point to, any provision of the Bankruptcy Code or other applicable nonbankruptcy law which would suspend the relevant time period under section 727(a)(2)(A) while the debtors resided for some eleven months in their first bankruptcy case. The trustee, however, in a chapter 7 case may "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law* by a creditor holding an unsecured claim that is allowable under section 502 of title 11 or

that is not allowable only under section 502(e) of title 11." 11 U.S.C. § 544(b) (emphasis added). Thus, the trustee, under this section, has the ability, for a two-year period beginning with his appointment, to avoid fraudulent transfers utilizing state fraudulent transfer provisions which, in Arkansas, provide a four-year statute of limitation, Ark.Code Annot. § 4–59–201, et seq., if there is at least one creditor at the time who has standing under such law to challenge the transfer.