**In re Joseph Benjamin HOGAN and Thelma Jeanne Hogan.**

**Bankruptcy No. 96–40689 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Oct. 7, 1997.

Scott Frick, Memphis, TN, for Plaintiff.

Stuart W. Hankins, Basil Hicks, North Little Rock, AR, for Defendants.

1. The seller lent the debtors the remaining $9,000, which they in fact later paid.

## ORDER SUSTAINING OBJECTION TO EXEMPTIONS

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the Objection to Debtors' Exemptions, filed by United States Fidelity & Guaranty Company ("USF & G"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(B).

### Procedural History

In April 1994, USF & G filed a complaint against the Hogans in the United States District Court for the Eastern District of Arkansas. Within a month after the filing of that complaint, the debtors began systematically liquidating and transferring their assets. Upon liquidation of their assets, including their homestead valued at $99,445.20, the debtors purchased a much larger home at a price of $229,000, paying $220,000 in cash for the new home.[1] Most of these transfers occurred in June and July of 1994. A large parcel of real estate was also transferred to their son on February 21, 1995. *United States Fidelity & Guaranty Co. v. Hogan (In re Hogan)*, 208 B.R. 459 (Bankr.E.D.Ark. 1997).

On February 27, 1995, a mere six days after the last transfer, the debtors filed a Chapter 13 case in bankruptcy. The chapter 13 case was dismissed on January 5, 1996, and the debtors' second bankruptcy case, under Chapter 7, was filed less than two months thereafter, on February 23, 1996. The debtors claimed the new homestead, purchased in July 1994, as exempt under the Arkansas Constitution, article 9. In response to the chapter 7 bankruptcy filing, USF & G timely filed an objection to exemptions on April 25, 1996,[2] and an adversary proceeding objecting to the debtors' discharge based upon the numerous transfers of property, 11 U.S.C. § 727(a)(2)(A). The ob-

2. The amended objection to exemptions, filed on February 12, 1997, was stricken as the issues raised in that amendment did not relate back to the timely filed objection.

jection to exemptions was originally scheduled to be heard on June 10, 1996, but was continued to be tried with the adversary proceeding because the matters involved the same issues of law and fact. Accordingly, on March 4, 1997, the parties submitted evidence to the Court. On March 28, 1997, upon the submission of post-trial briefs the adversary proceeding was under submission; argument on the objection to exemptions was re-set pending ruling on the adversary proceeding. On April 22, 1997, the Court entered judgment in favor of the debtors, finding that their discharge should be granted. Although judgment was entered in favor of the debtors,[3] the Court specifically found that the debtors had made the subject transfers with the intent of hindering, delaying or defrauding their creditors.[4] *United States Fidelity & Guaranty Co. v. Hogan (In re Hogan)*, 208 B.R. 459, 462–63 (Bankr. E.D.Ark.1997). On August 14, 1997, the parties appeared to conclude the objection to exemptions, and agreed to submit briefs on the remaining issues for the Court.

### Debtors Transferred Property with Fraudulent Intent

 It is lawful for an individual to convert non-exempt assets to exempt assets, even on the eve of bankruptcy. *In re Holt*, 84 B.R. 991, 1007–08 (Bankr.W.D.Ark.), *aff'd*, 97 B.R. 997 (W.D.Ark.1988), *aff'd*, 894 F.2d 1005, 1008 (8th Cir.1990). However, the right to convert assets to take advantage of exemptions under the Bankruptcy Code and state law may not be done with the intent to conceal the assets, or hinder, delay or defraud creditors. *Id.* If conversion of non-exempt assets to exempt assets is made with such an intent, the Court may deny the debtor's claim of exemption. *In re Curry*, 160 B.R. 813 (Bankr.D.Minn.1993); *In re Allen*, 203 B.R. 786, 792 (Bankr.M.D.Fla. 1996). In the instant case, the debtors held a homestead valued at $99,445.20. There is no dispute that the debtors would have been entitled to exempt this homestead in a bankruptcy case. On the eve of their first bankruptcy, however, utilizing both their exempt homestead and other, non-exempt assets, the debtors purchased a much larger home, for $229,000. Thus, the debtor converted at least $129,554.80 of their nonexempt assets to an exempt asset. While, as discussed above, this is not *per se* grounds for sustaining an objection to the exemption, the evidence presented, together with the debtors' demeanor, demonstrate that the debtors made the transfers and the conversion to exempt assets with the actual, fraudulent intent to hinder and delay their creditors. *United States Fidelity & Guaranty Co. v. Hogan (In re Hogan)*, 208 B.R. 459, 462–63 (Bankr. E.D.Ark.1997).

 The Court reaffirms its finding that the debtors made these transfers with the intent to hinder, delay or defraud their creditors, and specifically USF & G. Not only were the specific transfers to third persons,

---

**3.** Since section 727(a)(2)(A) requires that the transfers must have occurred within one year prior to the filing of the petition in bankruptcy, and all of the transfers occurred more than one year prior to the pending, albeit second, bankruptcy, the Court had no choice but to dismiss the complaint.

**4.** The specific findings of fraud by the Court in Adversary Proceeding 97–4070 are not entitled to preclusive effect because the determination of fraud was a determination essential to the prior judgment. *See Tudor Oaks Limited Partnership v. Cochrane, (In re Cochrane)*, 124 F.3d 978, 983 (8th Cir.1997)(elements of collateral estoppel). Collateral estoppel will apply only to determinations that are necessary to support the judgment entered in the first action. This concept is important in this case because the debtors could not obtain appellate review of this Court's determination of fraud in the first case. Since they won on the merits in Adversary Proceeding 97–

4070 they had no grounds for an appeal. While there are many distinctions and refinements in the general analysis of this element of the collateral estoppel principle, *see generally* Wright & Miller *Civil Practice & Procedure* § 4421, the distinctions need not be addressed here because this case presents the quintessential reason for the existence of this particular element. It would be manifestly unfair to apply collateral estoppel to the Courts finding of fraud where there was no realistic opportunity for an appeal of that finding.

That is not to say, however, the collateral estoppel will not hereafter apply. The Court's ruling in this Order will have collateral estoppel effect in other pending or future litigation with these debtors. It is from the finding of fraud in this Order that the debtors may appeal in order to seek review of the finding of fraud.

including their children, made with fraudulent intent, but the use of the proceeds from these transfers and the liquidation of assets effected a fraudulent conversion of their non-exempt assets to an exempt asset.

Since a debtor rarely, if ever, admits to a fraudulent intent, the objecting party must generally rely on a combination of circumstances which suggest that the debtor harbored the necessary intent. The Court may then draw an inference from this evidence. *In re Van Horne*, 823 F.2d 1285, 1287 (8th Cir.1987); *United States v. Vertac Chemical Corp.*, 671 F.Supp. 595, 617 (E.D.Ark. 1987)(Wood, J.) ("[F]rauds are generally secret, and have to be tracked by the footprints, marks, and signs made by the perpetrators, and discovered by the light of the attending facts and circumstances.").

The Court finds that there was actual fraud, *i.e.*, that the debtors' transfers were made with the intent to hinder, delay, or defraud their creditors. Since fraud can rarely be demonstrated by direct evidence, the courts generally look to certain factors, or "badges of fraud" to make the determination of whether fraudulent intent exists. Federal law and Arkansas law use the same factors, looking to whether

(1) the transfer was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer was concealed;

(4) before the transfer occurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all of the debtor's assets;

(6) the debtor absconded;

(7) the debtor concealed other assets;

(8) the value received for the transfer was not reasonably equivalent to the value of the asset transferred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made; and

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred.

Ark.Code Annot. § 4–59–204(b)(1)–(10); *Brown v. Third National Bank (In re Sherman )*, 67 F.3d 1348 (8th Cir.1995); *Graven v. Fink (In re Graven )*, 936 F.2d 378, 383–84 n. 8 (8th Cir.1991); *United States v. Johnston*, 245 F.Supp. 433 (W.D.Ark.1965).

In this case, there are not only a number of badges [of fraud] present, these badges are multiplied by the large number of transfers made. Three of the six transfers were made to members of their immediate family, and a fourth was made to the attorney advising them. In the immediate time period preceding the transfers, the debtors had been sued by USF & G. The transfers constituted virtually all of the debtor's assets, and, within the meaning of the Bankruptcy Code, the debtors were rendered insolvent. It is also questionable whether the debtors relinquished control of the assets in many of these transfers. While control of their home and a rental home were relinquished, the debtors continued to maintain control over the recreational home, the farm land through their son, and certainly, the cash obtained from the liquidation of the IRA account. It is also questionable whether reasonably equivalent value was given in several of these transactions. There was insufficient proof of the value of the recreational home, and the son's payment of the father's corporate debts is incongruous. No value was given for the grant of a mortgage on their current home; that was simply a gift to their son, notwithstanding the assertion that he is making the mortgage payments.

Although not among the nonexclusive listing of the badges, the Court notes there are other circumstances which indicate fraud. Specifically, at the time the debtors consulted with their counsel, they were not only transferring one of their major assets to him and busily transferring the remainder of their assets, they were also already considering filing a bankruptcy case. The debtors' own explanations as to why the assets were transferred are indicative of fraud. The debtors claim that they needed the money to pay bills. However, despite their assertions of being apparently without funds, they were able to pay on July 29, 1994, $230,000 in cash to purchase a residence more than twice the value of the long-time family homestead they

sold on July 28, 1994. This was a substantial upgrade in housing for a couple who were purportedly having difficulty paying their bills.

Finally, the debtors did not present a demeanor consistent with truthfulness. For example, the debtor husband made much of the fact that he had been diagnosed with cancer at this time. Indeed, on cross-examination, when he could not remember particular facts, he raised as an excuse, his battle with cancer. The Court notes, however, that at the same time he claimed he was confused due to his medical condition, he was also able to very deliberately and methodically transfer all of his assets from the reach of his creditors.

### Extent of Entitlement to the Homestead Exemption

In order to delay, hinder and defraud their creditors, and particularly, USF & G, the debtors converted valuable non-exempt assets to exempt assets. The debtors' prior homestead was valued at $99,445.20. With the liquidation of their non-exempt assets and the sale of their homestead, the debtors purchased a much larger home at a price of $229,000. The debtors have claimed an exemption of the full value of their new residence in this bankruptcy case. While the Court believes that the objection to exemptions could be sustained to the extent of the entire value of their newly acquired residence, not merely to the extent of any amount over $99,224.20, USF & G specifically objected to the exemption only to the extent that the value of the Debtors' present homestead exceeds the cash they received from the sale of their prior homestead.

Debtors are afforded great relief under the Bankruptcy Code, including a right to retain assets claimed exempt. In Arkansas, like many states, debtors retain their homes, as well as all of the equity value in their homes, free from the claims of the majority of their creditors, other than those with a properly perfected security interest. *See generally Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871, 875 (8th Cir.1988) ("the policy of exemption statutes is to favor the debtors ... *by preventing the forced loss*

*of the home and of the necessities of subsistence.")(quoting Forsberg v. Security State Bank,* 15 F.2d 499, 501 (8th Cir.1926)). This relief, however, carries the burden of honesty and fair dealing. As sanction for dishonesty and fraud with regard to creditors, or improperly claiming exemptions, Courts not only deny discharge, but also sustain objections to exemptions, strike amendments, and refuse to permit amendments to the exemptions. *See, e.g., In re Talmo,* 185 B.R. 637 (Bankr.S.D.Fla.1995).

This is an instance in which the debtors should not be permitted to claim any portion of the value of their residence as their homestead exemption. The debtors committed fraud in transferring assets and in converting their non-exempt assets to exempt assets. In so doing, they also utilized and abandoned what would have been a valid exempt asset, the homestead. If the only response to fraudulent behavior is to limit the exemption to what it should have been, the $99,000 homestead absent the fraudulent transfers, there is no disincentive to discourage debtors from acting fraudulently. Fraudulent conversion of assets or improper claims of exemptions becomes a riskless endeavor. Debtors have nothing to lose and everything to gain by their fraud. Since the proper operation of the bankruptcy system depends upon debtors' honesty, this Court cannot ignore or endorse the use of fraud in permitting an exemption in the homestead. Accordingly, the Court believes that it would be appropriate to sustain the objection to exemptions and deny the exemption of any portion of their homestead. *See In re Slentz,* 157 B.R. 418 (Bankr.N.D.Ind.1993); *In re Schwarb,* 150 B.R. 470 (Bankr.M.D.Fla.1992).

Although there is some authority for the proposition that the appropriate punishment is not denial of exemptions, but, rather, a denial of discharge, *see, e.g., In re Sumerell,* 194 B.R. 818 (Bankr.E.D.Tenn.1996), the facts of this case demonstrate the shortcomings of that proposition. In the instant case, although fraud within the meaning of section 727(a)(2)(A) of the Bankruptcy Code was found after trial of the objection to discharge, the debtors were able to avoid this ultimate sanction under the Bankruptcy Code by their

scheming. The debtors previously resided in a short-lived attempt at a reorganization bankruptcy in chapter 13.[5] The chapter 13 case was dismissed when, after hearing on the objection of USF & G to confirmation and a motion to dismiss, the debtors failed to take any action to convert their case to a case under chapter 7. Although the debtors took no action to convert the case to chapter 7, one month later they refiled a new case under that chapter thus gaining a new filing date. Thus, by the time this second bankruptcy case was filed, the one-year time period under section 727(a)(2)(A) had elapsed. That is, all of the fraudulent transfers had occurred more than one year prior to the filing of this bankruptcy case. Had the case converted to chapter 7, that time period would have been preserved. But, by residing for some eleven months in their first bankruptcy case, the debtors were able to escape the punishment of denial of a discharge outlined in section 727(a). *See United States Fidelity & Guaranty Co. v. Hogan (In re Hogan)*, 208 B.R. 459 (Bankr.E.D.Ark. 1997).

■ That being said, however, an objection to the exemption in its entirety is not before the Court. In light of the strictures of *Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Court concludes that it must limit the remedy to the specific relief requested by USF & G.

### Conclusion

The large number of transfers, combined with the badges of fraud which attach to the majority of the transfers, together with the debtors' demeanor, overwhelmingly demonstrate that the transfers of property, including the transfer of non-exempt assets to an exempt asset, was made with the intent to hinder, delay and defraud their creditors, including USF & G. Accordingly, the debtors are not entitled to exempt their homestead to the extent they used nonexempt assets to purchase that homestead, *see In re Bandkau*, 187 B.R. 373, 381 (Bankr.M.D.Fla.

5. Of course, under the chapter 13 superdischarge, any debts arising from fraud could have

1995), such that the objection will be sustained to the extent that the value of the debtors' present homestead exceeds the $99,-445.20 in cash they received from the sale of their prior homestead. Based upon the foregoing, it is

**ORDERED** that Objection to Debtors' Exemptions, filed by United States Fidelity & Guaranty Company on April 25, 1996, is SUSTAINED.

**IT IS SO ORDERED.**