# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No.  02-6046 WA

_____

| | | |
|---|---|---|
| In re: Michael Todd Bradley and Vicki D. Bradley, | * * * | |
| Debtors | * * | |
| Renee S. Williams, | * * * | Appeal from the United States Bankruptcy Court for the Western District of Arkansas |
| Trustee-Appellant, | | |
| v. | * * * | |
| Michael Todd Bradley and Vicki D. Bradley, | * * * | |
| Debtors-Appellees. | * | |

_____

Submitted: April 29, 2003
Filed: June 16, 2003

_____

Before, KRESSEL, Chief Judge, SCHERMER, and FEDERMAN, Bankruptcy Judges.

_____

FEDERMAN, Bankruptcy Judge.

_____

On August 21, 2002, the bankruptcy court entered an order sustaining in part and overruling in part the Chapter 7 trustee's objection to the debtors claim of a

homestead exemption.[1] In so doing, the court found that debtors did not act fraudulently when they converted non-exempt property to exempt property. The trustee appeals. We affirm.

## FACTUAL BACKGROUND

In July of 1997, Michael Bradley purchased the flatbed division of J.B. Hunt Transport, Inc. for $45 million and formed Charger, Inc. In order to finance the purchase price, Mr. Bradley personally guaranteed a $40 million commercial loan and personally borrowed approximately $5 million. By December 15, 1999, Mr. Bradley recognized that Charger, Inc. could not survive, and he filed a Chapter 7 bankruptcy petition on its behalf. From that date until September of 2000, Mr. Bradley was unemployed. Beginning in 1998 Mr. Bradley and his wife, Vicki, sold a substantial portion of their personal assets. In 1998 Mr. Bradley sold a herd of calves for $14,354.00. In 1999 he sold the remaining herd of cattle for $20,384.00. In January of 2000 Mr. Bradley liquidated a 401(k) plan from which he netted $84,459.54. In March of 2000 he sold a horse trailer for $3,500.00 and a rental home from which he netted $51,510.00. In that same month he sold three horses for a total price of $3,750.00. In April of 2000 Mr. Bradley sold a four-wheeler for $700.00. He also liquidated a security account worth approximately $5,000.00. On August 7, 2001, the Bradleys sold their home, 250 acres, furniture, and equipment for net sales proceeds of $433,630.96. None of the sales was to a relative or business associate, all sales were public, and all sales were for fair consideration. Mr. Bradley deposited some of the funds in his checking account and he used those funds for living expenses. Most significantly here, the Bradleys also used $480,000 of the funds to purchase a home located in the Har-Ber Meadows subdivision, Springdale, Arkansas (the Homestead).

---

[1]The Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas. Judge Fussell retired on January 1, 2003.

On October 4. 2001, the Bradleys filed a Chapter 7 bankruptcy petition. They claimed the Homestead as exempt. The Chapter 7 trustee (the Trustee) objected to the exemption, arguing that the Bradleys facilitated the purchase of the Homestead by making numerous transfers with the intent to hinder, delay, or defraud creditors. The Homestead was located on 1.98 acres. Since the State of Arkansas permits debtors to claim one urban acre, unless the value exceeds $2,500.00, in which case debtors are allowed to claim one-quarter acre regardless of value, the Trustee also objected to the claim of exemption for 1.98 acres. In response, debtors amended Schedule C, carved out one-quarter acre as their homestead, and claimed the one-quarter acre as exempt. The Bradleys claimed that the current market value of the one-quarter acre was $477,500.00, and that the value of the non-exempt tract was $2,500.00. The Trustee again objected, arguing that Springdale ordinances and Har-Ber Meadows Subdivision regulations prevented partitioning of any of the lots, therefore, the Bradley's homestead exemption should be limited to the sum of $2,500.00. The Trustee also asked the bankruptcy court to deny the Bradleys their Homestead exemption, claiming that the conversion of non-exempt assets into exempt assets was fraudulent.

In an order dated August 21, 2002, the bankruptcy court overruled the Trustee's objection to the following: (1) the Bradleys' claim of exemption for the Homestead; (2) the objections to the amended exemptions based on the Trustee's allegations that the Bradleys fraudulently transferred property; (3) the Trustee's motion to limit the Homestead exemption to $2,500.00; and (4) the Trustee's objection to the Bradleys' carve-out of one-quarter acre. The bankruptcy court then found that it was not practicable for debtors to live in the Homestead in violation of the restrictive covenants, therefore, it sustained the Trustee's motion to sell the Homestead. The bankruptcy court ordered the Trustee to sell the Homestead and hold the proceeds in trust pending another hearing at which the court would determine the appropriate value of the one-quarter acre held to be exempt, and the remaining land that was not exempt. The trustee appealed from the portion of the order that overruled

3

her objections to the claim of exemption, and the Bradleys appealed the order to sell. We dismissed the Bradleys' appeal, as it was not timely filed. Therefore, all that is before us is the Trustee's appeal of the order overruling her objection to the claim of exemption.

## STANDARD OF REVIEW

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, giving due regard to the opportunity of the bankruptcy court to judge the credibility of the witnesses.[2] We review the legal conclusions of the bankruptcy court *de novo.*[3] The allowance or disallowance of a claim of exemption is subject to *de novo* review.[4]

## DISCUSSION

We begin with the Trustee's argument that the bankruptcy court erred in finding that debtors did not act fraudulently when they transferred non-exempt assets into exempt assets. The Trustee does not rely on any section of the Bankruptcy Code (the Code) for her contention that the Bradleys should be denied their claim of a homestead exemption because they made transfers to hinder, delay, or defraud their creditors. She did not file an adversary proceeding seeking to avoid the transfers she

---

[2]*Gourley v. Usery (In re Usery),* 123 F.3d 1089, 1093 (8th Cir. 1997); *O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)*, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing *First Nat'l Bank of Olathe, Kansas v. Pontow*, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[3]*First Nat'l Bank of Olathe, Kansas v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997).

[4]*In re Adcock*, 264 B.R. 708, 708 (D. Kan. 2000).

4

alleges were fraudulent, nor did she file an adversary proceeding objecting to the Bradleys' discharge.[5]

Instead, the Trustee alleges that because the Bradleys converted non-exempt assets into the Homestead, they are not entitled to claim the Homestead as exempt. As the Eighth Circuit stated in *Norwest Bank Nebraska, N.A. v. Tveten (In re Tveten),*[6] we must first distinguish between a debtor's right under applicable state law to exempt certain property from the claims of his creditors and his right under federal bankruptcy law to a discharge.[7] When a debtor claims a state-created exemption, the scope of the claim is determined by state law.[8] And, under the Code, the conversion of non-exempt assets into exempt assets, without more, will not deprive a debtor of the right to claim the exemption to which he is otherwise entitled.[9] Instead, a creditor or trustee may seek to deny a debtor's discharge, if there is extrinsic evidence of the debtor's intent to defraud creditors.[10] In this case, the Trustee does not seek to deny the Bradleys a discharge. Thus, we find no legal basis in Arkansas law to consider the Trustee's allegation that the Bradleys should be denied their claim of a homestead exemption because they converted non-exempt assets into exempt assets. The

---

[5]11 U.S.C. §§ 548(a) and 727(a)(2); Fed. R. Bankr. P. 7001(1) and (4).

[6]848 F.2d 871 (8th Cir. 1988).

[7]*Id.* at 873.

[8]*Id.*

[9]*Id.*; *In re Hogan*, 214 B.R. 882, 884 (Bankr. E.D. Ark. 1997); *In re Holt*, 84 B.R. 991, 1007 (Bankr. W.D. Ark. 1988), *affirmed*, 97 B.R. 997 (W.D. Ark. 1988), *affirmed,* 894 F.2d 1005, 1008 (8th Cir. 1990).

[10]*Tveten*, 848 F.2d at 873. In *Tveten* the bankruptcy court found extrinsic evidence of fraud. Nevertheless, Dr. Tveten did retain some of the property he claimed as exempt following certification of that issue to the Minnesota Supreme Court. *Id*. at 873, n. 3.

Supreme Court of Arkansas has held that the purchase of a homestead out of assets upon which there is not an existing lien is not, and cannot be, a fraud on creditors.[11] Moreover, even if we were to consider conversion of assets as a basis for denying the exemption, the Trustee would need to prove by extrinsic evidence that the Bradleys had converted non-exempt assets to exempt assets with the specific intent to defraud creditors. The bankruptcy court found that the Trustee failed to offer any extrinsic evidence of the Bradleys' intent, other than the fact that they converted the assets. The "mere conversion of non-exempt property to exempt property is not fraudulent as to creditors even if the motivation behind the conversion is to place those assets beyond the reach of creditors."[12]

Recognizing that fraud can rarely be demonstrated by direct evidence,[13] the bankruptcy court analyzed the badges of fraud to determine if the Trustee proved that the Bradleys had fraudulent intent. Arkansas courts consider the following ten factors when making a determination of intent: (1) whether the transfer was to an insider; (2) whether the debtor retained possession of the property after the transfer; (3) whether

_____

[11]*Starr v. City Nat'l Bank, et al.*, 159 Ark. 409, 252 S.W. 356, 357 (1923). *See also Hardin v. Hancock*, 96 Ark. 579, 132 S.W. 910, 910 (1910) (stating that the conveyance of a homestead, even if made without consideration and with an intent to defraud creditors, is valid); *Isbell v. Jones*, 75 Ark. 591, 88 S.W. 593, 593 (1905) (reasoning that creditors could not reach a homestead before it was conveyed, therefore, the conveyance of a homestead, even if made without consideration and with an intent to defraud creditors is valid); *Sannoner v. King*, 49 Ark 299, 5 S.W. 327, 328 (1887) (holding that the homestead exemption law is generous and humane, and that one is not excluded from claiming the benefit thereunder even if he attempted to defraud his creditors). *But see, In re Hogan*, 214 B.R. at 886-87 (holding that the conversion of non-exempt assets to exempt assets, if made with an intent to hinder, delay, or defraud creditors, is sufficient to deny debtors their claim of a homestead exemption).

[12]*Id.* at 874.

[13]*Hogan*, 214 B.R. at 885.

6

the debtor concealed the transfer; (4) whether a creditor sued or threatened to sue debtor before the transfer; (5) whether the transfer was of all or substantially all of debtor's assets; (6) whether debtor left town; (7) whether the debtor concealed other assets; (8) whether debtor received less than reasonably equivalent value for the transfer; (9) whether debtor was or became insolvent after the transfer was made; and (10) whether the transfer occurred shortly before or after a substantial debt was incurred.[14] The bankruptcy court found that only two of the ten factors applied in this case; the transfers included substantially all of the Bradleys' assets and they were insolvent at the time of the transfers. The bankruptcy court also found Mr. Bradley's explanation for the transfers to be credible. Mr. Bradley testified that he anticipated being released from liability for his personal obligation related to Charger, Inc. He was, therefore, concerned about tax obligations that might arise from the release. Prior to purchasing the Homestead, he had received advice of counsel that the purchase of exempt property would reduce his tax exposure, if he were to obtain a release of the obligations. Whether that tax advice was accurate or not, the bankruptcy court found that the advice, and not the intent to defraud his creditors, prompted Mr. Bradley to purchase the Homestead. We find no error in these findings.

Thus, the only issue before us is whether the Bradleys are entitled to claim one-quarter acre of their choosing as their exempt homestead.

The Arkansas Constitution permits debtors to claim an urban homestead as exempt with certain conditions:

> The homestead in any city, town, or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon, *to be selected by the owner*, provided the same shall not exceed in value the sum of two thousand five hundred dollars,

---

[14]*In re Bradley*, 282 B.R. 430, 438-39 (Bankr. W.D. Ark. 2002) *citing In re Hogan*, 214 B.R. at 885.

and in no event shall such homestead be reduced to less than one-quarter of an acre of land, without regard to value.[15]

The Arkansas legislature codified this provision as follows:

> (a) The following property shall be exempt from execution under bankruptcy proceedings pursuant to Public Law 95-598:
>
> . . .
>
>> (4) The urban homestead not exceeding one (1) acre of land with improvements thereon, but not to exceed two thousand five hundred dollars ($2,500) in value, but in no event to be less than one-quarter (1/4) of an acre of land without regard to value–Arkansas Constitution, Article 9 § 5.[16]

It is undisputed that the Bradleys' home is valued in excess of $2,500.00. The Trustee, therefore, argued that, since the Bradleys knew at the time of purchase that their property exceeded one-quarter acre, their homestead exemption should be limited to $2,500.00. The bankruptcy court found that Arkansas law does not support such a premise. Thus, we find no legal basis in Arkansas law to support the Trustee's position. If a homestead exceeds $2,500.00 in value, debtors may claim a homestead exemption only by showing that the area claimed as exempt does not exceed one-quarter acre in size.[17] Even if a homestead is ordered sold, Arkansas courts recognize a debtor's right to select a homestead within the constitutional limits.[18] As the Arkansas Supreme Court held in *Rowe v. Gose,* "even if the lot . . . exceeds a quarter

---

[15]Ark. Const., art. 9, § 5 (emphasis added).

[16]Ark. Code Ann. § 16-66-218(b)(4) (Michie2002).

[17]*Barnhard v. Gorman*, 131 Ark. 116, 198 S.W. 880, 881 (1917).

[18]*Rowe v. Gose*, 240 Ark. 722, 401 S.W.2d 745, 746 (1966).

acre in area, it does not follow that the homestead exemption is wholly unavailable. The owners are in any event entitled to select a tract not exceeding the constitutional minimum of a quarter of an acre."[19] The bankruptcy court found, consistent with Arkansas law, that the Bradleys were limited to an area of no more than one-quarter acre.[20] And, since the homestead property exceeds $2,500.00 in value the Bradleys were entitled to select which portion of the tract they wished to claim as exempt.[21]

The Trustee argued, alternatively, that, even if the Bradleys were allowed to carve out one-quarter acre as a homestead, this carve-out should not be allowed because the restrictive covenants prohibit any division of the Homestead. The Arkansas Supreme Court has held that debtors may not select a homestead that is laid out in an arbitrary, capricious, or unreasonable shape.[22] The Trustee seems to argue that if restrictive covenants prohibit division of property, any carve-out must be arbitrary, capricious, or unreasonable. There is no support for this position in the holdings of the Arkansas Supreme Court. In this case, the bankruptcy court found that the Bradley's carve-out was not arbitrary, capricious, or unreasonable because the one-quarter acre claimed as exempt contained the house, a driveway for access to the house, two feet of property in front of the house, two feet of property on the southwest side of the house, 20 feet on the northwest side of the house, and 30 feet on the northeast side of the house. The carve-out was not unreasonable in shape, and contained contiguous, straight boundaries. We find no error in the bankruptcy court's application of Arkansas law to this situation. Pursuant to Arkansas law, the Bradleys are entitled to claim one-quarter acre of their land as an exempt homestead. It is

---

[19]*Id.*

[20]*In re Bradley*, 282 B.R. 430, 440-41 (Bankr. W.D. Ark. 2002).

[21]*In re Giller*, 127 B.R. 215, 217 (Bankr. W.D. Ark. 1990); *Price v. Price*, 258 Ark. 363, 371, 527 S.W.2d 322, 327 (1975).

[22]*Sparks v. Day*, 61 Ark. 570, 22 S.W. 1073, 1074 (1896).

within their discretion to designate the one-quarter acre as long as that designation is neither arbitrary, capricious, nor unreasonable. The fact that the restrictive covenants preventing division diminish any value of the non-exempt portion of the property is not relevant to a debtor's right to select and claim one-quarter acre as exempt under Arkansas law. We, thus, affirm the bankruptcy court's order overruling the Trustee's objection.


A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT